LASALA and others *vs.* HOLBROOK.

A person cannot be restrained from making a reasonable improvement on his own premises, upon the ground that it cannot be made without endangering an edifice erected on the adjacent premises, if the owner of the adjacent premises does not possess any special privileges, protecting him from the consequences of such improvement, either by prescription or by grant from the person making the improvement, or from those under whom he claims title.

The owner of land has a natural right to the use of the same in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots ; and the owners of such adjacent lots have no right to destroy his land by removing these natural supports or barriers.

Where a person, in the exercise of ordinary care and skill, in making an excavation for the improvement of his own lot, digs so near the foundation of a house on the adjacent lot as to cause it to crack and settle, he will not be liable for the injury if such excavation would not have injured the adjacent lot in its natural state.

Aliter as to ancient buildings or those which have been erected upon ancient foundations, and which, by prescription, are entitled to an exemption from injuries resulting from the improvements on the adjacent lots, or as to those buildings which have been granted in their present situation by the owners of such adjacent lots, or by those under whom they derived their title.

THIS was an application to dissolve or modify an injunction July 22. which had been granted by the injunction master of the first circuit. The bill stated that the complainants were seized of certain lots in the city of New-York, adjoining Ann street, on which Christ's church stands; which church was erected thereon more than thirty-eight years since. That the defendant was the owner of a lot lying west of the lots on which the church was built, and extending to within six feet of the west side of the church. That the defendant had commenced the erection of a building on his lot, which was intended to cover the whole lot, and to be six stories high; and that he was sinking the foundation of the building sixteen feet below the natural surface of the ground, and ten feet lower than the foundation of the church. That by excavating his lot, in the manner contemplated, the defendant would greatly endanger the church ; and that the wall of the church, at one corner thereof,

opposite which corner the excavation had been completed, had already settled so as to leave a considerable crack in the wall. That from the information which the complainants had obtained from persons skilled in such matters, and who had examined the premises at their request, they believed their church was in imminent danger of being destroyed, if the defendant was permitted to proceed with the excavation, in the manner in which he was going on. And they prayed for an injunction, restraining the defendant from proceeding with such excavation to the depth contemplated, and from removing any earth from the premises of the complainants, by causing the same to fall, by such excavation on his own lot. The injunction having been allowed by the master, as asked for in the bill, the defendant immediately put in his answer. And upon a petition stating these facts, and also that his workmen were thrown out of employ and that he was suffering great damage from the continuance of the injunction, he applied for and obtained an order for the complainants to show cause, at a short day, why the injunction should not be dissolved or modified. The defendant, in his answer, stated that he was proceeding in good faith to improve his own lot by erecting a large building thereon, with a deep cellar which would be very valuable in that part of the city; and that for the purpose of erecting a substantial wall for his own building, without injuring the property of the complainants, he had employed a skilful workman, who had already erected a large building with a similar deep cellar, in another part of the city. That he was proceeding with his excavation, and was building the wall as he progressed with all possible care and prudence. That he had advanced with the same about three fifths of the length of the church, and in that part where, from the nature of the soil, the excavation would be most likely to produce injury to the church. And the defendant denied that the wall of the church was in danger of falling, or of any other serious injury, from the proceedings of his workmen. He also attributed the crack in the wall, at the corner of the church, to the settling of the earth in the rear thereof, which had been used as a cemetery, from the weight of building materials placed thereon by permission of the complainants.

*J. Lynch,* for the complainants.

*D. Lord, jun.* for the defendant.

THE CHANCELLOR. I can readily believe, from the nature of the soil and from the great depth of the defendant's intended excavation below the foundation of the church, that the complainants' fears for the safety of their building are not entirely groundless; although the defendant alleges in his answer, and undoubtedly supposes there is no danger of serious injury to the walls of the church from the proceedings of his workmen. It is not, however, alleged in the complainants' bill that the defendant is proceeding to improve his property in an unreasonable, or unusual manner, or with any intention of injuring their wall or building. Neither do they claim any particular privilege as belonging to their church, either by grant of the defendant, or those under whom he claims, or by prescription. This case, therefore, presents the question whether one person can be restrained from making a reasonable improvement on his own premises, because the same cannot be made without endangering a modern edifice erected upon the adjacent premises of another. *Sic utere tuo ut alienum non lœdas,* is a maxim well known to our law ; but the propriety of applying this maxim to a particular case sometimes becomes a question of great doubt, from the difficulty in determining what is a legal injury to the property of another. The erection of a new mill, in the immediate vicinity of one which had been previously erected by another person, might in fact destroy a moiety of the value of his mill, yet this maxim could not be properly applied to such a case. The owner of the first mill sustains no legal damage, because at the time he erected it he knew his neighbor had a legal right to make a similar improvement on his own premises, of which he could not deprive him by the previous erection. But if the first mill was supplied by a stream of water which had been accustomed from time immemorial to flow in a particular channel, the owner of the second mill could not divert the stream from its accustomed channel, although done on his own land, so as to deprive the first mill of its necessary supply of water. . The di-

verting of the water in such a case would be a legal injury to the owner of the first mill ; because it would deprive him of a natural right, which was paramount to the right of his neighbor to an artificial use of the water. Upon examining the several cases on the subject, the same principles appear to have been applied to injuries arising to the owner of one lot by the artificial use of an adjacent lot by its owner. I have a natural right to the use of my land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots. And the owners of those lots will not be permitted to destroy my land by removing this natural support or barrier. Thus it is laid down by Rolle, that I may sustain an action against a man who digs a pit on his own land so near to my lot that my land falls into the pit. (2 *Rol. Abr.* 565, *l.* 10.) But my neighbor has the right to dig the pit upon his own land, if necessary to its convenient or beneficial use, when it can be done without injury to my land in its natural state.[a] I cannot, therefore, deprive him of this right by erecting a building on my lot, the weight of which will cause my land to fall into the pit which he may dig in the proper and legitimate exercise of his previous right to improve his own lot. ( 1 *Sid. Rep.* 167. 2 *Roll. Abr.* 565, *l.* 5.) These principles were fully recognized by Ch. J. Parker, in the case of *Thurston* v. *Hancock,* (12 *Mass. Rep.* 223,) where it was held that the defendants, who had excavated their own lot to the depth of thirty feet below the foundation of the plaintiff's house, were not liable for having thus placed the house in a dangerous position ; but that the plaintiff was entitled to recover for the damage, if any, which had been occasioned by the loss of his soil in consequence of such excavation. And in the case of *Panton* v. *Holland,* (17 *John. Rep.* 92,) where the defendant, in the exercise of ordinary care and skill in making an excavation for the improvement of his own lot, had dug so near the foundation of the plaintiff's house as to cause it to crack and settle, it was held he was not liable for the injury. From the recent English decisions it appears that the party who is about to endanger the building of his

---

(a) See *Wyatt* v. *Harrison,* (3 *Barn. & Adolph. Rep.* 871.)

neighbor by a reasonable improvement on his own land, is bound to give the owner of the adjacent lot proper notice of the intended improvement, and to use ordinary skill in conducting the same; and that it is the duty of the latter to shore or prop up his own building, so as to render it secure, in the mean time. (*See Peyton* v. *The Mayor of London,* 9 *Barn. & Cress.* 725. 4 *Man. & Ry.* 625, *S. C. Walters* v. *Pfeil,* 1 *Moody & Malk.* 362. *Massey* v. *Goyder,* 4 *Car. & Payne,* 161.) There is another class of cases, however, where the owner of a building on the adjacent lot is entitled to full protection against the consequences of any new excavation or alteration of the premises intended to be improved, by which he may be in any way prejudiced. These are ancient buildings, or those which have been erected upon ancient foundations, and which by prescription are entitled to the special privilege of being exempted from the consequences of the spirit of reform operating upon the owners of the adjacent lots; and also those which have been granted in their present situation by the owners of such adjacent lots, or by those under whom they have derived their title. (*Palmer* v. *Fleshees,* 1 *Sid.* 167. *Cox* v. *Matthews,* 1 *Vent.* 237, 239. *Story* v. *Oden,* 12 *Mass. Rep.* 157. *Brown* v. *Windsor,* 1 *Cromp. & Jer. Rep.* 20.)

In the case under consideration, the complainants' church was not entitled to any special protection against the consequences of the present proceedings of the defendant, either by prescription, or by grant from the owners of the adjacent lot upon which the excavation was going on. And as the defendant and his workmen are in the exercise of reasonable care and skill in the erection of his building, and in laying the foundations thereof, the complainants must adopt such course as will secure their church against the dangers to which it is exposed. They are not, therefore, entitled to the aid of this court, to suspend the operations of the defendant; and the injunction must be dissolved.