## FARRAND vs. MARSHALL.

An owner of ground adjacent to the land of another has no right to remove the earth, for the purpose of making brick, and thus withdraw the natural support of his neighbor's soil and cause the same to sink.

The right to lateral support must be regarded as an incident to the land. It is a right of property necessarily and naturally attached to the soil.

Thus, where the plaintiff and defendant were the owners of adjoining lots, in a village, and the defendant excavated his lot, lying below the plaintiff's, perpendicularly, to a depth of 50 feet, and removed the clay and dirt, for the purpose of making brick, thereby endangering the plaintiff's soil and fences, he was restrained, by injunction, from excavating or removing any soil from land adjoining the plaintiff's premises which should cause the plaintiff's land, by reason of the withdrawal of its lateral support, to fall away or subside.

The doctrine of granting relief, under such circumstances, is confined to those cases in which the plaintiff has not, by building or otherwise, increased the lateral pressure upon the adjoining soil. If he has himself erected buildings upon the margin of his own land, he is regarded as himself at fault, and therefore not entitled to recover.

MOTION to vacate or modify an injunction. The plaintiff stated in his complaint that he was the owner of a piece of ground in the city of Hudson, bounded east by Second street, south by Rope alley, north by Strawberry alley, and west by land owned by the defendant; that the lot was about 220 feet in width on Second street, and extended westerly two hundred feet; that it was purchased by the plaintiff of the defendant on the 23d of June 1846; that northerly of this lot, on the opposite side of Strawberry alley, was a lot conveyed by the defendant to George Robertson, on the 3d of October, 1844. In the conveyance of that lot the defendant reserved the right and privilege of taking and carrying away so much and such clay or dirt as he might wish for the purpose of making brick; that the plaintiff's lot was situated upon the summit of a hill, about 70 feet above its base, and was nearly level; that such level, before the excavation by the plaintiff, mentioned in the complaint, extended about 90 feet westerly beyond the plaintiff's line, and then the hill sloped gradually towards the Hudson river; that the Robertson lot was also situated upon the northerly slope of the hill; that the plaintiff's lot, being 80 feet

Farrand v. Marshall.

above the level of the river, and 1500 feet from its east channel, formed an eligible site for a residence, with a fair and extensive view of the river and the surrounding country. That upon purchasing the lot, the plaintiff commenced making improvements, and had erected thereon valuable buildings, and had brought the lot to a high state of cultivation as a garden; that the defendant had a brick yard upon premises owned by him in the vicinity of these lots, where he had been extensively engaged in the manufacture of brick; that since he sold the lot to the plaintiff he had been making excavations in the hill west of the plaintiff's lot, and removing the earth for the purpose of making brick; that these excavations extended nearly the whole width of the lot from Strawberry alley to Rope alley, and, at some points, had been carried within four or five feet of the plaintiff's lot; that about 32 feet west from the plaintiff's lot the excavation or cut had been carried into the hill perpendicularly to the depth of about 50 feet and about 60 feet in width; that such excavation was made for the purpose of removing the earth and converting it into brick; that the effect of the excavation had already been to cause a great portion of the western and northwestern part of the plaintiff's lot to crack and subside, and the fences to crack and stretch apart, and if the excavation was longer pursued, the premises would cave in and fall away, and the plaintiff's dwelling house, situate above 100 feet from the west line of the lot, would be endangered; that the defendant had declared his intention to continue his excavations up to the line of the lot, and had served upon the plaintiff a written notice to that effect; that the defendant had also declared his intention to remove the clay from the lot northerly of the plaintiff's lot, the effect of which would be to cause the plaintiff's fences to break apart and the soil to sink down and slide away, and thus produce great and irreparable injury to the plaintiff; and that such would be the effect if such excavation was made upon the Robertson lot within a line drawn from a point on the westerly line of Second street at a distance of 200 feet from the south-easterly extremity of said lot to a point on the southeasterly line of a certain road men-

tioned in the complaint, at a distance of 250 feet from Strawberry alley.

Upon these facts, alleged in the complaint and verified by affidavits, an injunction was allowed, restraining the defendant from digging and excavating in or upon his premises for the purpose of obtaining clay or earth to manufacture brick, and also from digging or excavating for that purpose upon the lot conveyed to Robertson, excepting that portion of the lot lying northerly from a line drawn from a point on the westerly side of Second street, 200 feet from the southeasterly extremity of said lot to a point on the said road at a distance of 250 feet on a direct line to the nearest point on Strawberry alley.

Upon the motion to dissolve the injunction, numerous affidavits were read, relating to the condition and value of the property, and the nature and effect of the excavations made by the defendant, but which it is unnecessary to notice more particularly.

*H. Hogeboom,* for the plaintiff.

*A. L. Jordan* and *J. C. Newkirk,* for the defendant.

HARRIS, J. It seems scarcely credible that the question how far the owner of ground adjacent to land owned by another, may remove the earth, and thus withdraw the natural support of his neighbor's soil, without being liable for the injury, should have remained until this day unsettled. And yet, I believe it is so. Opinions have not unfrequently been expressed on the subject, and that too by eminent jurists ; but, so far as I know, these opinions have been *obiter.* I have not met with a single case, where this was the precise point in judgment.

The earliest writer who has mentioned the subject, and to whom all subsequent writers and judges, who have had occasion to speak of it, have referred, is Rolle. It had been held that an action would not lie against a man for digging in his own land, although he thereby undermines and destroys the house of his neighbor ; for the reason that it was his own fault that he

had built his house so near the confines of his own land. In noticing this decision, Rolle adds, in a *semble*, that " a man who has land next adjoining my land, cannot dig his land so near mine, that thereby my land shall go into his pit." (2 *Roll. Ab. Trespass, I, p. l.* 1.) Although this opinion is cautiously expressed, it has generally been cited with approbation. (*Lasala* v. *Holbrook*, 4 *Paige*, 169. *Hay* v. *The Cohoes Company*, 2 *Comstock*, 159. *Wyatt* v. *Harrison*, 3 *Barn. & Ad.* 871.) In the latter case, the distinction taken by Rolle is thus stated by Lord Tenterden, Ch. J. " It may be true that if my land adjoins that of another, and I have not by building increased the weight upon my soil, and my neighbor digs in his land so as to occasion mine to fall in, he may be liable to an action. But, if I have laid an additional weight upon my land, it does not follow that he is to be deprived of the right of digging his own ground, because mine will then become incapable of supporting the artificial weight which I have laid upon it." In the late case of *Humphries* v. *Brogden*, (1 *Law & Eq. Rep.* 241,) Lord Campbell, Ch. J., in referring to the doctrine of Rolle, says : " It stands on natural justice, and is essential to the protection and enjoyment of property in the soil. Although it places a restraint on what a man may do with his own property, it is in accordance with the principle *sic utere tuo, ut alienum non lœdas*." And again he says : " The right to lateral support from the adjoining soil is not, like the support of one building upon another, supposed to be gained by grant, but is a right of property passing with the soil."

On the other hand, in *Radcliff's Executors* v. *The Mayor &c. of Brooklyn*, Bronson, J. dissents from the doctrine of Rolle. He insists that the law gives every man such a title to his own land, that he may use it for all the purposes to which such land is *usually applied*, without being answerable for the consequences. (4 *Comstock*, 202.) But this case, no more than either of the others to which I have referred, required any judgment upon the question. The learned judge himself says, in referring to the case then before the court : " It *seems* to fall within the principle that a man may enjoy his land in the way

such property is *usually enjoyed*, without being answerable for the indirect or consequential damages which may be sustained by an adjoining landowner.   But if that be a doubtful position, there is a class of cases directly on the point in judgment." He then proceeds to show that a municipal corporation acting under an authority conferred by the legislature to grade, level and improve streets and highways, if they exercise proper care and skill, are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway.   This is the only point settled by the judgment in *Radcliff's Executors* v. *The Mayor &c. of Brooklyn.*   I was a member of the court at the time, and concurred in the judgment, but I certainly did not suppose myself committed to the views of the distinguished judge who pronounced the judgment of the court upon the doctrine now in question.   I presume no other member of the court, not even the learned judge himself did.

Again; assuming that the views expressed in the case last noticed are to be regarded as controlling, I am not prepared to say they are applicable to the case in hand.   It will be observed that the opinion is expressed with characteristic caution.   The learned judge had enumerated a variety of cases which he regarded as exceptions to the general rule, that a man may do what he will with his own property.   He had noticed other cases where the owner of land had been held to be justifiable, though he had used his land in such a manner as to result in injury to an adjacent owner.   Then, when he comes to notice the distinction of Rolle, he questions its soundness, and says he thinks a man may lawfully use his own land " for all the purposes to which such lands are *usually* applied."   And again, he says the case then under consideration seems to fall within the principle, that " a man may enjoy his land in the way such property is *usually* enjoyed."   Can it be said that the excavation of a city lot to the depth of 50 or 60 feet, and a removal of the earth for the purpose of making it into brick, is within the rule as thus qualified and restricted ?   Is the land used for a purpose to which such land is " usually applied ?"   Does the

Farrand *v.* Marshall.

owner enjoy his land in the way such property is "usually enjoyed?" It is apparent from the illustrations put by the learned judge, that he contemplated no such use of the land, when he expressed the opinion upon which the defendant now relies. The guarded manner in which he has uttered his views, shows, I think, that that judge himself would not have been willing to carry his doctrine so far as to justify this defendant in the use he proposes to make of his land. Can it be, that the law will so far limit a man in the mode in which he shall enjoy his land, as ⬤ not to allow him to do any thing which shall create a nuisance upon it, and yet will allow him to do an act which shall utterly destroy his neighbor's land? I think not. Every man has a right to the undisturbed possession of his own land. But no man has a right to the unrestricted enjoyment of that possession. He may not so use it as to make that use destructive of his neighbor's rights. The neighbor has the same right to the undisturbed possession of his own land that he himself claims. He must therefore use his land in subordination to such right. "It is better," says Gardiner, J. in *Hay* v. *The Cohoes Company*, above cited, "that one man should surrender a particular use of his land, than that another should be deprived of the beneficial use of his property altogether."

The ownership of land over which a stream of water is accustomed to flow, is as absolute as that of any other land. No man has a right to disturb the owner in its possession, and yet, that land is charged with the servitude of conveying the stream to the next owner. The owner of such land, however absolute his title, must use it subject to this charge. He may not lawfully remove such land when its effect would be to divert or diminish the flow upon his neighbor's land. The rule of law, in such a case, is, that every man has the right to the advantage of a flow of water on his own land without diminution or alteration. (*Arnold* v. *Foot*, 12 *Wend.* 330. *Van Hoesen* v. *Coventry*, 10 *Barb.* 518.)

Upon the same principle, I think, the right to lateral support must be regarded as an incident to the land. It is a right of property "necessarily and naturally attached to the soil." It has been well said that "the negation of this principle would be in-

compatible with the very security for property, as it is obvious that if the neighboring owners might excavate their soil on every side up to the boundary line, to an indefinite depth, land thus deprived of support on all sides could not stand by its own coherence alone." (*Gale & Whatley on Easements*, 216.)

The civil law, recognizing the doctrine that the owner of land has a right to support from adjoining soil, has fixed a rule for the purpose of protecting this right. It declares that "if a man dig a sepulchre, or a ditch, he shall leave between it and his neighbor's land, a space equal to its depth, and if he dig a well, he shall leave the space of a fathom ;" and a French writer, referring to a similar provision in the code of France, says, "by a parity of reasoning, the owner of land, who is desirous of quarrying on his own property for stone or sand, or similar materials, must not open the earth at the extreme point which separates his land from that of his neighbor, and continue to excavate perpendicularly, because his neighbor's land thus deprived of support, would be in danger of falling in." (*Pardessus, Traite des Servitudes, cited in the Treatise above mentioned.*)

But this doctrine has always been strictly confined to those cases in which the owner of land has not, by building or otherwise, increased the lateral pressure upon the adjoining soil. Every attempt to extend it beyond such cases has proved unsuccessful. When the party complaining of an injury has himself erected buildings upon the margin of his own land, he has been regarded as himself at fault, and therefore not entitled to recover, upon the familiar doctrine that he who complains of the use which another makes of his own property, must himself be free from fault. "A man who himself builds a house adjoining his neighbor's land," says Parker, Ch. J. in *Thurston* v. *Hancock*, 12 *Mass. Rep.* 220,) "ought to foresee the probable use by his neighbor of the adjoining land, and, by convention or by a different arrangement of his house, secure himself against future interruption and inconvenience." Referring to the doctrine of Rolle, he says, "we have not been able to discover that the doctrine has ever been overruled, nor

to discover any good reason why it should be." The case itself was probably decided erroneously. Under the circumstances as they appeared in evidence, I do not think the plaintiff was chargeable with any fault or negligence. He had taken the precaution to sink the foundation of his house *fifteen* feet below the natural surface. The defendant had dug and removed the soil upon his adjoining lot to the depth of *forty-five* feet. The result was, that the plaintiff was obliged to take down his house to save the materials. It seems to me that the action ought to have been sustained. No fault or negligence was imputable to the plaintiff. Every reasonable precaution had been observed. On the contrary, the defendant was not using his land for any ordinary purpose. The plaintiff had sufficiently guarded himself against any ordinary use of the adjacent land. This was all that could be required of him. Having done this, and the defendant, by digging and removing his soil to a very unusual and extraordinary depth, having destroyed his house, I think he was entitled to compensation. But, however this may be, the doctrine of the case, so far as it relates to the question now under consideration, is in favor of the rule already asserted.

In the case now in hand, it is not pretended that the plaintiff has by any artificial means increased the lateral pressure of his land upon the adjoining soil. No greater support is now required than when the land first came into existence. Under such circumstances, I think the defendant had no right to withdraw that support, and thus allow the plaintiff's land to fall. The defendant being engaged in this unlawful act, the injunction was properly allowed.

But it may be that, in its terms, the injunction is too broad. Whether it is so or not, I am unable to say. It restrains the defendant from digging &c. within certain limits. It may be that these limits embrace more soil than is necessary for the support of the plaintiff's land. I think the injunction should be so modified as only to restrain the defendant from excavating or removing any soil from any land adjoining the plaintiff's premises, which shall cause the plaintiff's land, by reason of the withdrawal of its lateral support, to fall away or subside.

The defendant will then be at liberty to excavate as he pleases, at the peril, nevertheless, of being convicted of a violation of the injunction, in case his excavation should result in injury to the plaintiff's land. The costs of the motion should abide the event of the suit.

Ordered accordingly.