Shankland, J.
I am of opinion that the legal effect of the several conveyances to lots numbers eighteen and twenty, stated in the case, was to vest the title in the respective owners to the centre of the division wall, from its top down to the crown of the arch of the passage-way, and from thence down to the centre of the passage. Each owner had also the right to the support of the wall afforded by the leg of the arch which rested on the land of the other. Whether this right of support is derived from an implied contract or covenant, or reservation, arising out of the deed, executed when the title to the two houses .was severed by the original owner of both, or whether it springs out of the necessity imposed by the law of vicinage, is of but little consequence. In either case the right is the same, so far as the question here involved is concerned. The more important question, and on which the parties differ, is the right of one owner, thus situated, to do the acts complained of in this case. The jury having found that the party-wall and arch were in such a condition that a just regard for life and property rendered their removal necessary, and that the stores, in their then condition, were unfit for occupation, it seems to me to follow, as a necessary legal right, that the defendants might remove them and rebuild others in their places, doing no unnecessary damage, as in this case.
If the defendants could have removed one-half of the party-wall, without removing the other half also, they would have been liable for removing the latter; but the whole evidence established the fact that this was impossible. If .the power to remove this- dilapidated wall did not exist, then the defendants would have to submit to the inconvenience and danger of occupying' their store, with this impending ruin hanging over them, or to abandon it until the plaintiffs or their landlord saw fit to join in the act of rebuilding. Such a result would be a disgrace to the laws of any civilized nation.
*607 The case of Camtgbell v. Mesier (4 John. Ch. R., 334) went farther than this case requires There the chancellor held the defendant liable to contribute to the expense of erecting a-wall, under similar circumstances. Of course it assumed the taking down the old wall to have been justified, which is as far as is necessary to go in this case. I know that case has been questioned in some subsequent ones (Sherred v. Cisco, 4 Sandf. S. C. R., 480), but to me it seems to stand on a firm foundation. The equity jurisdiction which formerly existed in the Court of Chancery is now vested in the Supreme Court, so that if there was a distinction between the powers of the two courts over these questions, it no longer exists.
But the right to take down the party-wall in case of necessity, and rebuild, may be well founded on an implied reservation in the grant, when William S. Smith, who owned both lots, conveyed lot eighteen to Burrowes, in 1796. Clearly, he granted the right to Burrowes to have his half of the wall supported by that leg of the arch which rested on the land, he, Smith, retained; not only during the existence of the arch and wall then there, but it was a perpetual easement; as much so, and as enduring, as the easement of the passage-way itself.
The easement that grant conferred on Burrowes, as to one leg of the arch, it reserved to Smith, as to the other leg of the arch. The two tenements became, as to their easements, both dominant and servient tenements, by virtue of the same grant. In all such cases the right to enter into and upon the servient tenement to make repairs, in case of necessity, always exists. This class of easements are properly termed “ easements of necessity’’ (Law of Easements, 53), and arise out of some act of the owners of the dominant and servient tenement, without which the intention of the parties to the severance cannot be carried into effect, or their rights be enjoyed.
*608 If the easement of the plaintiffs to pass through the passage-way had not been extinguished by its being bricked up in 1834 by the consent of the owner of lot number eighteen, and the new wall erected by the defendants carried down to the earth by the consent of the plaintiffs’ landlord, it is clear that an action could have been maintained for thus changing the wall in that particular. But it was proved that the owner of number eighteen assented to the destruction of the easement of the passage-way, and no claim is made on that account, in this action. It was, doubtless, a benefit to both parties.
The case of Malts v. Hawkins (5 Taunt., 20), cited by the appellants’ counsel, is an authority to prove that the parties owned this wall, each one-half in severalty ; but nothing further. There the parties owned adjoining lands, and had built a party-wall at joint expense, one-half on the land of each. The plaintiff subsequently raised the wall higher than it had formerly been, for the purpose of adding to the buildings on his side; and it was for tearing down this addition to the old wall that the action of trespass was brought and sustained, for that half of the new wall which was over or upon the plaintiff’s land. But the right to tear down a ruinous party-wall was not in question in the case, and it, therefore, throws no light on the subject.
The appellants’ counsel concede that the defendants would have the right, in case of a party-wall out of repair, to enter upon it for the purpose of repair. I think rebuilding it, in case of necessity for so thorough a work, is repairing it, within the proper meaning of that term.
The defendants claim that the party-wall was in so dangerous a state that they had the right to abate it as a private nuisance. But I doubt whether the law applicable to the subject would warrant them in tearing down the archway or digging into the foundation. (11 Mecs. & Wells, 176; 11 Barb. S. C. R., 390.) I do not place my opinion on that branch of the defence.
*609 The appellants ask for a new trial, for the improper admission of evidence, which was objected to by him. But the evidence was strictly admissible, as tending to prove that the work was done with the least possible damage to the plaintiffs’ business, and the reasons therefor.
The questions propounded to the jury were so framed as to cover all the material issues between the parties, and the responses to them by the jury were equivalent to a special verdict. There was no error in this respect, and the judgment should be affirmed.
Denio, C. J.
There is no question in this case as to the right of way between the two stores by which access to the ground in the rear was provided for when the buildings were erected. The passage was closed long before the plaintiffs became lessees. No such right of way was demised to them, and they cannot and do not make any complaint for having been deprived of it. The same remark is true as to the trespass, if it was a trespass, committed by the defendants in placing the new wall in part upon land which did not belong to them, but which was the freehold of Surget, the adjoining proprietor. If they had no right to do this under the circumstances, as against Surget, the plaintiffs’ landlord, still the plaintiffs were not injured. The new wall was upon the precise site of the one which existed when the plaintiffs took their lease. Besides, there is reason to infer from the evidence that there was a mutual understanding between the defendants and Surget as to the situation of the new wall; for he is found cooperating with them in renewing the old one by erecting the temporary partition; and he soon after rebuilt his own store, making use of the new wall for its support. In regard to the injury for which the action is brought, to wit, the damage to their goods, and the interruption of their business, the plaintiffs are in the same situation which their landlord would have been if he had occupied the store instead of leasing it, and *610 had sustained the damages complained of, without having consented to what the defendants did. The first question, then, is, what were the rights and duties of these respective proprietors as to the wall in question as between each other, after Smith, the proprietor of the whole land on which both buildings were situated, conveyed the easterly lot, which was afterwards leased to the plaintiffs ? The building upon that lot was supported by the arch and the common wall between the two buildings. The conveyance, as it embraced just half the original lot, bounded the grantee by the middle of the arch and the centre of the wall. It is to be presumed that the wall was then sufficiently strong to answer the purposes for which it was built; and that both edifices were in a tdnantable condition. It would seem to be clear, upon the most obvious principles of justice, that Smith could not, as against his grantee, have immediately taken down the wall, and thus have deprived the building, on the lot he had conveyed, of its support. He could not cut the wall through the centre and take down the part which stood upon his own land. This would have destroyed the whole wall as effectually as though he had professedly taken down the whole. There is a late case in the English Court of Exchequer, precisely in point. One Halliday held a mortgage, containing a power of sale, upon two houses, which had been built at the same time, and adjoined each other. Upon a sale under the power, the plaintiff purchased one of the houses, which was conveyed to him. The defendant purchased the other house under the same power, and took a conveyance of a subsequent date. The defendant, in excavating for a sewer upon his own premises, caused the walls of the plaintiff’s house to give way, and the action was brought for this injury, and the plaintiff" recovered a verdict. Parke, Baron, interrupted the defendant’s counsel on the motion for a new trial, with the inquiry, “ Did not the mortgagee, by making one assignment before the other, in effect, grant a right of support ? ” The counsel contro *611 verted the position. The verdict was sustained; the opinion of the court being given by Pollock, O. B. He said : “ It seems to be clear that where a number of houses are built upon, a plot of ground, all the houses belonging to the same person being all built together, and each obviously requiring the mutual support' of its neighbors for their common protection and security, such right of mutual support equally exists, whether the owner parts first with one house and then with the other, or with two together; the ownership of the latter being afterwards divided, either by sale, mortgage, devise or by any other means.” “ It seems to be purely a matter of common sense that the possessors are not to be deprived of that mutual support, and that a person in possession of one of the houses shall not be per mitted to say to his neighbors, ‘ You are not entitled to the protection of my house; I will pull it down to the ground, and let the houses on each side of it collapse and fall into the ruins.’ ” (Richards v. Rose, 9 Ex. R., 218 ; 24 Eng. L. & Eq. R., 406, S. C.) In Brown v. Windsor (1 Cromp. Jer., 20), the plaintiff had built his house against the defendant’s by his express permission, and had enjoyed the easement twenty-six years. Then the defendant, in undermining his own wall, injured the plaintiff’s house. It was held that the plaintiff could sustain an action. It was considered that the plaintiff had established an easement for the support of his wall, by express agreement made when the house was erected, and also by prescription. These authorities are sufficient to show that, as the law is understood in England, the plaintiff’s original right to the support of the store by the common wall was complete; and I am not aware of any authority to the contrary in this state, or elsewhere. It does not follow from what has been said that in every case where one building requires the support of another which it adjoins, and they belong to different owners, there is an easement for support, in favor of the former against the latter. The rule is otherwise. In Peyton v. The Mayor *612 &c., of London (9 Barn, & Cress., 725), the defendant was sued for taking down his own house without using any precautions to prevent the plaintiff’s, which adjoined it, from falling, in consequence of which the plaintiff’s house was injured, and in part fell down. It was not shown that the plaintiff was entitled to have his house supported by the defendant’s house. Lord Tenterden, before whom the case was tried, was of opinion that it was the duty of the plaintiff to support his own house; and accordingly directed a nonsuit, which was sustained by the Court of King’s Bench. This is analogous to the doctrine that a man may, in general, do what he will on his own land so that he do not affect the adjoining premises of his neighbor, in their natural state. (Lasala v. Holbrook, 4 Paige, 169 ; Radcliff's Ex'r, v. The Mayor, &c., of Brooklyn, 4 Comst., 195 ; Panton v. Holland, 17 John., 92 ; Wyatt v. Harrison, 3 Barn. & Adolph., 87 ; Farrand v. Marshall, 21 Barb., 409.) But if a person digging on his own land, or taking down an adjoining house, does the work so negligently that his neighbor’s premises are thereby injured, an action lies. (Id., and Walters v. Pfeil, 1 Moody & Mal., 362.) So if the owner of a building not subject to an easement for the support of an adjoining building, but which actually supports to any extent such adjoining building, takes his own structure down without giving timely notice to the adjoining proprietor, so as to enable him to protect his building, and damages result, the former is responsible. (Peyton v. The Mayor, &c., supra; Lasala v. Holbrook, supra.)
In this case we hold that the owner of the building occupied by the plaintiffs was entitled to have it supported by the common wall, while that wall remained in a condition to uphold it. But the jury have found that the wall, and the arch on which it stood, were so decayed and ruinous, that a just regard to the safety of life and property rendered their removal necessary; and that the buildings, on that account, were not safe to be occupied for stores, for the *613 year ensuing the time the defendants commenced their wall. They have also found, what seems quite obvious, that the wall could not be split through the centre, so as to leave the half which was on the plaintiffs’ lot standing, after the other half was taken down; and that the outer walls, and the interior structure of the defendants’ store, could not be taken down without prostrating the wall. What then is the law in such a case ? Must the party who is ready to rebuild await the actual falling down of his store, if the adjoining owner is unwilling, or, from having parted with the possession of his property for a term, is unable to join in rebuilding the wall? This position would be highly unreasonable, and it is not sustained by any authority. In a case like this, in all its material features, Chancellor Kent decided that the devisee of the party who had stood out against having the old wall taken down was bound, in equity, to pay one-half of the cost of the new wall to the owner of the adjoining building, who had erected it. This was going further than is required to sustain the defendants in this case. The decision of course includes the establishment of the right of the plaintiff to take down the old and erect the new wall; for if that was an illegal act, no claim to contribution would have arisen out of it. The learned chancellor accordingly quotes Pothier, to show that no action would lie for the inconvenience occasioned to the party who refused to unite in rebuilding the wall, as follows: “ If I necessarily deprive my neighbor of the profits of his business, arising from the use of his side of the wall during the time of the repair of the party wall, I am not bound to indemnify him for his loss, because I am only in the exercise of a lawful right, unless I consume unnecessary time in the construction of the wall.” So Domat, in treating of “ services,” lays it down that, where it is necessary to rebuild a wall which serves for bearing a building or supporting anything belonging to another person, he who is owner of the wall, or who ought to maintain it in good *614 condition, will" be liable only for the charges necessary to repair the wall; and whatever is laid out, either in demolishing that which rested on the wall, or in supporting it, will be borne by the person who had the right to rest the said thing on the wall. (Domat's Civil Law, b. 1, tit. 12, §5.)
I have noticed these authorities, not because I conceive that the subject of division walls is regulated, in this country, by the civil law, but to show,that even by applying these principles, which are quite as favorable to parties claiming services upon the lands of others as the common law, the defendants would not, upon the facts found, have been liable to an action for taking down this wall.
My view of the rights of these parties is this: Each had a title to the soil to the division line, which was the centre of the arch and wall; but this title was quallSed by the easement which each owner had of supporting his building by means of the common wall. As the half of the wall, standing on the land of the owner, would not alone afford the requisite support, because the whole of the arch and the entire thickness of the wall was, required for that purpose, the law gave him an interest, in the nature of an easement, in the part of the wall standing on the land of the other party. This right existed as long gs the wall continued to be sufficient for that purpose and the respective buildings remained in a condition to need and to enjoy that support;. When this ceased to be the case, and it became necessary to take down the wall and rebuild the stores, either the interest of each proprietor in the land of the other ceased with the existence of the state of things which had created it, or each was entitled to call upon the other to contribute towards rebuilding the wall on the same site, and in case of his default to build it himself, and call upon the other owner to reimburse him one-half of the expense. The view of Chancellor Kent was, that the mutual rights of the several owners against each other continued, and that either might rebuild, in case the other refused to cooperate. *615 and claim contribution from the defaulting owner. In a case which was determined in the Superior Court of New-York, that court held that the mutual easement ceased with the destruction of the buildings and the,wall by fire, and that the respective parties were remitted to their original unqualified title to the division line. (Sherred v. Cisco, 4 Sandf. S. C. R., 480.) I do not perceive any solid distinction between a total destruction of the wall and buildings, and a state of things which should require the whole to be rebuilt from the foundation. In either case there is great force in saying that the mutual easements have become inapplicable, and that each proprietor may build as he pleases upon his own land, without any obligation to accommodate the other. Circumstances may have materially changed since the adjoining proprietors were content with such walls as would have supported two adjoining dwellings. If the right of mutual support continues, by means of the original arrangement, or by prescription, it is for just such an easement as was originally conceded, or which has been established by long enjoyment. But in the changing condition of our cities and villages, it must often happen, as it did actually happen in this case, that edifices of different dimensions, and an entirely different character, would be required. And it might happen, too, that the views of one of the proprietors, as to the value and extent of the new buildings, would essentially differ from those of the other; and the division wall, which would suit one of them, would be inapplicable to the objects of the other. If it were necessary to determine this point in this case, I should be strongly inclined to adopt the views of the late Judge Sandfokd, in delivering the opinion of the Superior Court in the case just cited. But it is unnecessary, and might be improper, to pass upon that important practical question in this case; for, it being distinctly found that this wall and these old buildings were no longer fit to stand, the defendants violated no right which existed *616 in the adjoining proprietors in taking down their own building. This made it absolutely necessary to take down the wall. It would have fallen of itself, if the defendants had not directly disturbed anything beyond their own premises. II was a benefit and not an injury to the plaintiffs that the defendants carefully took down the wall instead of suffering it to fall by its own weight. They gave them timely notice to provide for the security of their property. Although they have suffered damages, it is not owing to.any wrongful act of the defendants, but to the misfortune of the plaintiffs in occupying a building which, if not actually untenantable, adjoined a wall and another building which were so far dilapidated that they required to be taken down. If the mutual easement for support had ceased, the plaintiffs could not call upon the defendants to erect another wall. Their resort, if they had any, would be against their own landlord. But the defendants did provide a new wall, which, when completed, furnished the support of which the plaintiffs had been temporarily deprived. If the right continued for each, of the proprietors to call upon the other to join in building a new wall, still the plaintiffs have no ground for complaint; for the defendants have committed no breach of their obligation in that respect. Either with or without the cooperation of the plaintiffs’ landlord, the defendants have erected a new wall, as beneficial at least for the plaintiffs’ purposes as the old one was in its best estate. Due notice was given to the plaintiffs of what the defendants were about to do. There was no unnecessary delay in completing the work, and no want of care or skill in its execution.
The result of these views is that the merits of the case were correctly adjudged in the Supreme Court.
The manner of submitting the questions to the jury was not objectionable upon any point to which an objection was taken. The propositions which the judge propounded were those naturally arising upon the pleadings and proofs; they embraced the points which the defendants’ counsel proposed, *617 in the substitute which they submitted; and the settlement of the form and language in which the submission was to be made was in the discretion of the judge. In point of form there should have been a general verdict, or the finding of the jury should have been put in the form of a special verdict. It was, in substance, a special verdict; for, taken in connection with the facts admitted by the pleadings, it contained everything material to sustain the judgment. I do not find that any other exception was taken to the form adopted in disposing of the case, though the defendants did except to what the judge held to be the legal-result of the finding.
The judgment should be affirmed.
All the judges concurring,
Judgment affirmed.