PEOPLE *ex rel.* BARLOW, Attorney-General, etc., v. CANAL BOARD (2).

*Real property — excavations — damage to adjoining soil and buildings — negligence — Laws 1872, chap. 786.*

The legislature, by a special act (Laws 1872, chap. 786), authorized the canal board to investigate the claim of a private firm for injuries done to the premises of said firm, by excavations made in repairing the canal, and if the facts proved were such as would create a legal liability, if proved, in a civil action against an individual to award damages to such firm. It appeared that the employees of the State excavated alongside the wall of a building standing upon the extreme boundary of the premises of said firm, in consequence of which the soil under such wall fell out and let down the building. The soil was quicksand, and the proof was sufficient to justify a conclusion that the soil would have fallen out if no building had been erected upon the lot. *Held,* that an individual would have been liable for injury done to the adjoining lot, and the canal board were authorized to make an award of the damages under the act in question to the extent of the injury done to the soil, but not for the building.

The whole amount allowed by the act was awarded. It did not appear distinctly what portion of the damages claimed by the firm was for injury to the building or what for injury to the lot alone. *Held,* that the award could not be set aside on that account.

The wall which fell was protected by substantial piling. The excavation was made more than two feet below and the earth removed for about seventy-five feet along and the excavation was left in that condition. *Held,* that there was evidence that the work was so negligently performed as to create a liability.

*Held,* also, that the firm was entitled to reasonable notice of the intended excavation, in order to enable them to protect their building.

CERTIORARI to review proceedings of canal board.

The premises of Pratt & Co., in the city of Buffalo, were bounded on the south by the berme bank of the Erie canal. Upon these premises, in 1845, they erected a building, the south wall of which was upon the south line of the lot.

The wall remained in good condition until the winter of 1871, when it was undermined by the removal of the soil adjoining on the south, by certain employees of the State engaged in enlarging the Erie canal; and Pratt & Co. sustained damage thereby.

The evidence returned to the writ of *certiorari* shows that the excavation made was five or six feet lower than the old foundation of Pratt & Co., and that about seventy-five feet along the wall was excavated and left over night, without any protection.

In 1872, the legislature passed an act (Laws 1872, chap. 786), authorizing and requiring the canal board to hear and investigate the claim of Pratt & Co., and allow them such sum (not exceeding $8,000) as would re-imburse them for that damage.

The canal board have heard the claim, taken proofs, and made the investigation required by that act, and on the 19th day of August, 1873, by resolution duly passed, declared Pratt & Co. justly entitled to compensation for damages in the sum of $8,000, and awarded the same to Pratt & Co., under said act.

The relator brought a common-law *certiorari* to review the proceedings. The other facts appear in the opinion.

*Francis C. Barlow,* attorney-general, for relator.

*R. L. Burrows,* for Pratt & Co.

MILLER, P. J. This is a common-law *certiorari,* brought to review the proceedings of the canal board in awarding the sum of $8,000 to the firm of Pratt & Co., of the city of Buffalo, in pursuance of an act of the legislature, entitled "An act for the relief of Pratt & Co." Laws of 1872, chap. 786.

Under the act cited, the canal commissioners were only authorized to make an award in case "they shall become satisfied, after due investigation, that the facts proved are such as would create a legal liability, if proved, in a civil action against an individual or a corporation." If, upon the facts presented, a civil action could have been maintained against an individual who had been injured, against the party causing the injury, then the canal commissioners were fully justified in making the award under the act in question. After a careful examination, I have arrived at the conclusion that a legal liability was created by reason of the relation which Pratt & Co. sustained as owners of the land adjoining to the canal, where the excavations were made, which were the means of undermining the land of Pratt & Co., and of causing the injury complained of.

It is a familiar principle, well settled by authority, that the proprietor of land has a natural right to the lateral support of the soil of his premises, by the adjoining lands so long as he allows them to remain in a state of nature. But such right does not extend to cases where the owner, by building or otherwise, has increased the lateral pressure upon the adjoining soil. *Lasalla* v. *Holbrook*, 4 Paige, 169; *Farrand* v. *Marshall*, 19 Barb. 380; S. C., 21 Barb. 409. And where the owner, in the exercise of ordinary care and skill, in making an excavation for the improvement of his own lot, had dug so near the foundation of the plaintiff's house as to cause it to crack and settle, it was held he was not liable for the injury. *Panton* v. *Holland*, 17 Johns. 92; *Thurston* v. *Hancock*, 12 Mass. 223. This principle is indorsed in *Lasalla* v. *Holbrook*, *supra*, and is stated in the marginal note with the addition and proviso: "if such excavation would not have injured the adjacent lot in its natural state." Although this language is not employed by the chancellor in his opinion, yet the principle laid down, and the authorities cited, appear to uphold it. Hence, it was held in *Thurston* v. *Hancock*, 12 Mass. 223, that the defendant was not liable for an excavation which placed the plaintiff's house in a dangerous position, but the plaintiff was entitled to recover for the damage, if any, which had been occasioned by the loss of his soil, in consequence of such excavation. There appears to be no sufficient reason why a person erecting buildings upon his own land, by means thereof should be subjected to any greater loss or injury than what the buildings actually create. In *Farrand* v. *Marshall*, 19 Barb. 386, some

language is employed in the opinion, which it is claimed holds, that by the erection of buildings on the margin of his own land, the party is himself at fault, and, therefore, not entitled to recover. This rule is placed in the opinion "upon the familiar doctrine that he who complains of the use which another makes of his own property must himself be without fault." The person thus building would certainly be free from fault, if the building did not create a sufficient pressure to cause the injury, and hence the doctrine can only be applicable where such was the fact. The learned judge cites 12 Mass. 220, which, as we have seen, sustains a recovery for the loss of the soil, but not the building, in consequence of the excavation, and regards it as erroneous, because the plaintiff was entitled to compensation for the injury to the house.

It is, therefore, apparent that the observations made were intended to apply to cases where the buildings created a pressure and thereby contributed to the injury. In support of the doctrine laid down are the remarks of GARDNER, J., in *Hay* v. *Cohoes Company*, 2 N. Y. 162, where he says, "no degree of care in the excavation by the pit owner would, I apprehend, justify the transfer of a portion of another man's land to his own." See, also, Washb. on Easements, 431, 432.

It follows, necessarily, from the rule laid down in *Lasalla* v. *Holbrook, supra*, that if the weight of the building does not in any degree affect the land upon which it is built, by creating a pressure outwards, upon the soil beneath, and the excavation would have injured the lot in its natural state, then the party making the excavation is liable for the injury to the soil. In the case before us the evidence shows that the excavation let out the quicksand from beneath the foundation, thus undermining the wall and causing the lot to cave in and let down the building, and the proof was sufficient to justify a conclusion that the same result would have followed if no building had been erected upon the lot.

If the principle stated is sound then the canal commissioners were authorized to make an award of damages under the act in question, to the extent of the injury done to the soil; but not for the buildings on the land. It does not appear distinctly what portion of the expenses incurred were for the restoration of the building or what portion for the lot alone, and it is therefore difficult to say whether too large an amount of damages was awarded. If this court can properly review the evidence taken before them, I am inclined to

People ex rel. Barlow v. Canal Board.

think that before error can be alleged in this respect, that it should be made to appear affirmatively, that the amount allowed was more than sufficient to compensate for the actual injury sustained, and as this is not apparent the award cannot be set aside on that account.

There is also another ground upon which I think the award of the commissioners can be upheld, and that is, that there is some evidence that ordinary care and skill were not used in making the excavation. The proof shows that the wall of Pratt & Co. was protected by substantial sheet piling; that an excavation was made from two to two and one-half feet deeper than the piling, and from five to five and one-half feet lower than the wall and the earth removed for the distance of about seventy-five feet along the piling with no wall built or earth filled in to sustain it, and left over night in that condition until it fell. An excavation of the soil and the putting up of the wall in short sections might have obviated the difficulty and prevented the accident, and as the case stood, there was evidence from which it might fairly be inferred that the work was negligently and carelessly performed so as to create a liability.

I am not prepared to assent to the position taken by the relator that the right existed to excavate without using reasonable care and skill. At least notice should have been given, to enable Pratt & Co., who were the persons to be affected, to provide against such a catastrophe. Some of the authorities cited sustain the doctrine. In *Panton* v. *Holland*, a new trial was granted upon the ground that the question of negligence, in not taking all reasonable care, was not submitted to the jury. The same principle is distinctly recognized in *Lasalla* v. *Holbrook*, and it is there said : " From the recent English decisions it appears that the party who is about to endanger the building of his neighbor by a reasonable improvement on his own land, is bound to give the owner of the adjacent lot proper notice of the intended improvement, and to use ordinary skill in conducting the same." In *Radcliff* v. *Mayor of Brooklyn*, 4 N. Y. 200, BRONSON, Ch. J., expressly excepts from the general rule that a man is not answerable for the consequences of enjoying his own property, cases where the injury has resulted " from the want of proper care or skill on his part." Upon principle there appears to be no ground for holding, even if a man has an absolute right to dig on his own land to any extent, that he is not answerable for want of care and skill or for negligence. See, also, Washburne on Easements, 436, § 18; 439, § 13; 441, § 15; where reference is made to the

effect of negligence and unskillfulness, and cases cited. Also, *Foley* v. *Wyeth*, 2 Allen, 131; *Richardson* v. *U. C. R. R. Co.*, 25 Vt. 465, 471.

In *Peyton* v. *Mayor of London, etc.*, 9 B. & C. 725, which is relied upon by the relator, the action was brought to recover damages against the owner of an adjoining house for pulling it down and causing injury thereby, and it was held: 1st. That upon the declaration, the plaintiff could not recover on the ground of the defendant's not giving notice that he was about to pull down the house, as that was not alleged as a cause of injury. 2d. That as the plaintiff had not alleged or proved any right to have his house supported by the defendant's he was to protect himself by shoring, and could not complain that the defendant had neglected to do it. The proof showed that the defective state of both houses had been known to both parties, and that the operation of taking down was carried on from day to day, and must have been known and seen by the tenant and occupier of the plaintiff's house.

The facts presented are entirely different from the case at bar, where the claimants had no notice whatever, and no opportunity was offered to them to protect themselves against injury.

*Charles* v. *Ranken*, 22 Mo. 574, holds, that the law does not exact of the owner of a building adjoining another, in taking down an old and in laying a new foundation, the same forbearance, care and expense for the security of his neighbor's property, that he would have found it for his interest to have taken for his own. No question of a want of notice appears to have been made in this case, and if it can be regarded as holding that the person removing the building, and causing the injury, is not liable for negligence, it is adverse to the general current of authority.

As the decision of the commissioners can be upheld upon the grounds stated, I have not deemed it necessary to discuss the question which was elaborately presented on the argument, as to what questions can be raised in a common-law *certiorari*, as well as some other points made. The proceedings of the commissioners must be affirmed.

*Proceedings affirmed.*