(110 App. Div. 787.)

### RILEY v. CONTINUOUS RAIL JOINT CO. OF AMERICA.

(Supreme Court, Appellate Division, Third Department.   January 8, 1906.)

1. ADJOINING LANDOWNERS—LATERAL SUPPORT—LAND IN NATURAL STATE.

Where an owner of land removed the lateral support from an adjoining owner's land, and by reason thereof the land and buildings of an adjoining owner were damaged by a landslide, and there was no evidence that the buildings were a burden in any way increasing the lateral pressure, damages were recoverable therefor.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adjoining Landowners, §§ 21–33.]

2. ESTOPPEL—ADMISSIBILITY OF EVIDENCE.

In an action against an adjoining owner for removing lateral support from plaintiff's lots, it appeared that plaintiff sold to defendant the lot which was excavated, and it was claimed by defendant that plaintiff knew the purpose for which the lands were purchased.  *Held*, that evidence on the part of plaintiff was properly considered which showed that at the time plaintiff agreed to sell the lands to defendant he spoke to defendant's general manager, and was told that defendant would secure the bank by putting in a retaining wall.

Appeal from Trial Term, Rensselaer County.

Action by Ellen Riley against the Continuous Rail Joint Company of America.  From a judgment for plaintiff, defendant appeals.  Affirmed.

Appeal by the defendant from a judgment dated the 22d day of May, 1905, and entered in the office of the clerk of the county of Rensselaer on that day on the verdict of a jury after a trial at the Rensselaer trial term; also from an order dated the 19th day of May, 1905, and entered in the office of said clerk on that day, denying the defendant's motion to set aside the verdict and grant a new trial on the minutes.

The plaintiff was the owner of two lots of land in Troy which extended from a street on the east to the lands of the New York Central & Hudson River Railroad Company on the west, a distance of about 200 feet. The surface of said lots descended rapidly to the west, the westerly ends thereof being a steep side hill, and the soil was clay mixed with loam and sand. The defendant commenced digging in said side hill adjoining the railroad lands for the purpose of laying a spur railroad track from the tracks of said railroad on its said lands to a factory owned and used by said defendant north of the plaintiff's lots.  The plaintiff obtained an injunction restraining the defendant from trespassing on her lots; whereupon the defendant purchased of her about 80 feet on the westerly end of each of her said lots, and took a quitclaim deed therefor.  It then continued said grading, and in doing so cut down and removed the earth next the line between its lands so purchased of the plaintiff and the plaintiff's other lands, for the purpose of making a level strip along and against the side hill on which to place said railroad spur track.  Plaintiff's lots, except for the grading done by the defendant, were in their natural state, and there had never been a landslide thereon in the memory of those who had spent their lives in that vicinity. On the easterly end of each lot facing the street was a small house with sheds and closets in the rear of each.  The work of cutting down said side hill and grading for the spur track railroad was done during the summer of 1902; the work being completed in the late fall of that year.  In the early spring of 1903, when the frost went out of the ground, there was a landslide on each of said lots commencing at the defendant's lands and extending to the house on each of said lots, causing damage to the lots, sheds, closets, and houses.  Before the landslide heavily loaded trains were run over said spur track, and the jar could be felt in the houses on said lots.  It is to recover the damages caused by said landslide that this action is brought. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

Samuel Foster, for appellant.
John P. Curley (Jeremiah K. Long, of counsel), for respondent.

CHASE, J.   That the landslide was caused by the defendant's removing the lateral support from the plaintiff's lots is not disputed. It is claimed, however, that such support was removed by the defendant on its own land while engaged in doing a lawful act for a lawful purpose, and that the plaintiff's damage must be regarded as damnum absque injuria, and the case of Radcliff's Executors v. Mayor of Brooklyn, 4 N. Y. 195, 53 Am. Dec. 357, is cited as authority for such contention.   The owner of lands burdened with buildings or structures which increase the lateral pressure is not entitled to have such buildings or structures supported by the adjacent landowners (Lasala v. Holbrook, 4 Paige, 169, 25 Am. Dec. 524; Washburne's Easements & Servitudes [4th Ed.] 582; 18 Am. & Eng. Ency. of Law [2d Ed.] 545; 1 Cyc. 776; and many other authorities); but it was said by the chancellor, in Lasala v. Holbrook, supra:

"I have a natural right to the use of my land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots.   And the owners of those lots will not be permitted to destroy my land by removing this natural support or barrier."

Bronson, C. J., in Radcliff's Executors v. Mayor of Brooklyn, supra, expressed doubt as to the correctness of the statement of the chancellor, especially so far as it had reference to property in cities and large towns.   Even if, as said in Sadlier v. City of New York, 40 Misc. Rep. 78, 81 N. Y. Supp. 308, the rule applied to ground in its natural state "hangs by a thread," yet it exists in this state, and is sustained by numerous authorities.

In Farrand v. Marshall, 19 Barb. 380, Harris, J., says:

"It seems scarcely credible that the question how far the owner of ground adjacent to land owned by another may remove the earth, and thus withdraw the natural support of his neighbor's soil without being liable for injury, should have remained until this day unsettled.   And yet I believe it is so. * * *   The earliest writer who has mentioned the subject, and to whom all subsequent writers and judges who have had occasion to speak of it have referred, is Rolle.   It had been held that an action would not lie against a man for digging in his own land, although he thereby undermines and destroys the house of his neighbor; for the reason that it was his own fault that he had built his house so near the confines of his own land.   In noticing this decision, Rolle adds, in a semble, that: 'A man who has land next adjoining my land, cannot dig his land so near mine that thereby my land shall go into his pit.'   Although this opinion is cautiously expressed, it has generally been cited with approbation."

And, referring to the opinion of Bronson, C. J., in Radcliff's Executors v. Mayor of Brooklyn, says:

"He insists that the law gives every man such a title to his own land that he may use it for all the purposes to which said land is usually applied, without being answerable for the consequences.   But this case, no more than either of the others to which I have referred, required any judgment upon the question. * * *   I was a member of the court at the time and concurred in the judgment, but I certainly did not suppose myself committed to the

views of the distinguished judge who pronounced the judgment of the court upon the doctrine now in question. I presume no other member of the court, not even the learned judge himself, did."

In White v. Tebo, 43 App. Div. 418, 60 N. Y. Supp. 231, the court, by Cullen, J., says:

"If nothing has been placed on the adjacent land which increases the pressure and therefore the burden on his own land, he has no more right to make an excavation which will cause his neighbors land to subside and fall in than he has to enter upon such land and trespass thereon. * * * The common-law rule itself which denies the right of lateral support to a building or structure which has increased the pressure proves so detrimental to the improvement of land that it has been modified by statute in most, if not all, the cities of this state. * * * "

The following, among other authorities, sustain the plaintiff's contention: Lasala v. Holbrook, supra; Farrand v. Marshall, 21 Barb. 409; Washburne's Easements & Servitudes (4th Ed.) 582; 18 Am. & Eng. Ency. of Law (2d Ed.) 542; 1 Cyc. 775; Ludlow v. Hudson River R. R. Co., 6 Lans. 128; Gillies v. Eckerson, 97 App. Div. 153, 89 N. Y. Supp. 609; Dorrity v. Rapp, 72 N. Y. 307; see note in Larson v. Metropolitan St. Ry. Co., 33 Am. St. Rep. 445.

There is no evidence in this case that the buildings facing the street on the east ends of plaintiff's lots were a burden thereon in any way increasing the lateral pressure at the line between the lands of the plaintiff and defendant. See White v. Tebo, supra. Indeed, the evidence before us tends rather to show that the landslide was entirely independent of any pressure arising from the weight of said buildings. Plaintiff's land being in its natural state, she had a right to the lateral support of the defendant's adjoining land.

It is suggested that the plaintiff knew the purpose for which the lands purchased by the defendant from her were to be used; but it also appears that testimony was received, without objection, showing that at the time the plaintiff's agent agreed to sell to the defendant the lands purchased by it he spoke to the general manager of the defendant about the bank sliding down if the grading was done, and he was told that the defendant would secure the bank by putting in a retaining wall. This evidence could not have been admitted under the pleadings to establish a breach of contract, but is was properly considered in answer to the suggestion of the defendant that by the deed the defendant was given a license to remove the lateral support to the plaintiff's remaining lands. On the trial, by consent, evidence was given as to the value of the plaintiff's real property before and after the landslide, and also evidence as to the cost of repairing her damages; and the court, quoting from the opinion in the case of Hartshorn v. Chaddock, 135 N. Y. 116, 31 N. E. 997, 17 L. R. A. 426, directed the jury, in case they found for the plaintiff, to determine the difference in the value of the plaintiff's property before and after the landslide, and also the costs of repairing her damages, and then render a verdict for the lesser of such amounts. The jury found a verdict in favor of the plaintiff for $500, which we think was not against the weight of evidence.

The judgment and order should be affirmed, with costs.   All concur.