Marcus G. Christ, J.
This is an article 78 proceeding to compel the respondent village to enforce the building code of the village. The particular provisions involved are section 11.2.2 and section 11.2.4. The first of these sections attempts to fix the substantive rights of adjoining land owners, where an excavation is made on property of one of them. Where it is 10 feet or less in depth, the burden of shoring up the sides of the hole so as to prevent damage to nearby buildings, is placed on the owner of the building. When the excavation exceeds 10 feet, the burden and expense of supporting such buildings is placed upon the excavator. The latter alternative incidentally, is contra to the common-law rule, which imposes the duty on the building owner who has increased the lateral thrust on the soil by the addition of an artificial structure, to support his own building, regardless of the depth of the excavation. (Village of Haverstraw v. Eckerson, 192 N. Y. 54; Farrand v. Marshall, 19 Barb. 380, affd. 21 Barb. 409.)
The second of the above sections of the building code is the enforcement section and reads as follows: “ § 11.2.4 Board of trustees may act. If the persons whose duty it shall be under the provisions of this Code to properly guard and protect an excavation, or to prevent adjoining earth from caving in or to preserve or protect any wall, building or structure from injury, shall neglect or fail so to do after having had a notice of 24 hours from the Board of Trustees, the Superintendent of Buildings may enter upon the premises and employ such labor, and furnish such materials and take such steps, as in his judgment may be necessary to prevent adjoining earth from caving in, or to make such wall, building or structure safe and secure, or to prevent the same from becoming unsafe and dangerous, at the expense of the person whose duty it is to keep the same safe and secure. ’ ’
These sections are alleged to have been patterned after similar sections of the Administrative Code of the City of New York, which it should be noted is distinguishable from a village ordinance in that it is a State legislative enactment. While a counterpart for section 11.2.2 is to be found in section C26-385.0 of the Administrative Code, there is nothing in it which even remotely resembles section 11.2.4 as adopted by the village.
There is a section of the Administrative Code (see § C26386.0) which provides a method for enforcement in a very limited way, i.e., where a structure is already unsafe at the commencement of an excavation. In that case the procedure for dealing with an unsafe building is adopted by reference, to wit: sections C26-193.0 through C26-201.0. But there is no *110 sanction specified for the more usual case, where a building is perfectly sound and safe to begin with, but thereafter may become unsafe by reason of a contemplated excavation, which is about to be made.
The sections alluded to for dealing with an unsafe building, have a carefully thought out plan for notice, inspection and trial of the issue, well calculated to satisfy constitutional requirements for due process.
There is a similar procedure set up in subdivision 7-a of section 89 of the Village Law for dealing with unsafe buildings. However, here we have the Village Board whose powers are considerably more circumscribed than those of the State Legislature, since they must not only stay within the Constitution, but must also stay within the ambit of their enabling acts, passing an ordinance, which is so sketchy in its terms, that it would be of dubious validity even if passed by the Legislature. It is estimated that these precautionary measures may cost as much as $20,000 and yet this section disposes of responsibility for the cost in the most summary and drastic fashion without even providing for a bearing.
It is sought to justify it under section 90-a of the Village Law, a general section authorizing the adoption of a building code, but obviously this section falls short of validating such an enactment as we are considering here.
While the court in Triangle Wine & Liq. Corp. v. Cannaviello (191 Misc. 296) assumed that the remedy of enforcement by the Superintendent of Buildings was exclusive, and therefore denied recovery for the cost which plaintiff incurred in underpinning defendant’s property, in Gida Operating Corp. v. Vista Constr. Corp. (N. Y. L. J., Oct. 22, 1948, p. 883, col. 7) a similar complaint was sustained. Furthermore, in the instant case, if this court’s view of the law is correct, there is no effective remedy for enforcement of this ordinance by the Superintendent of Buildings, exclusive or otherwise.
Application denied.
Short-form order signed.