# THE CITY OF QUINCY

## *v.*

## LAURA JONES *et al.*

1. REAL ESTATE—*right to lateral support of adjacent soil.* It is a well settled rule of law, that the owner of land has a right to have the soil of his premises sustained by the lateral support of the natural soil of the adjoining land, but this right is limited to the soil in its natural state, and does not extend to the support of any additional weight which the owner of the soil may place upon it, such as a building or other superstructure, near his boundary line.

2. SAME—*no servient right in respect to use of adjacent premises.* The owner may use his land in such reasonable way as his judgment shall dictate, either by making excavations or superstructures thereon, subject, however, to the implied condition that he shall not thereby interfere with his neighbor in the enjoyment of the same right in respect to his adjacent

land. Each is entitled to have his soil in its natural state sustained, when necessary, by the lateral support of the adjacent soil of the other, but neither has the right to burden the land of the other with the support of any additional weight, as that would be to make the land of the one servient to that of the other.

3. SAME—*right to remove lateral support of soil to a building of another, must be for a legitimate use, and exercised in a careful manner.* Where a party has erected a building upon his own land, but very near the land of another, such other will not be protected in making an excavation on his land so as to injure the building out of malice or mere caprice, but such excavation must be consistent with a reasonable and legitimate use of the party's own property, and the right must also be exercised with reasonable skill and care, in view of the character of the building and the nature of the soil, so as to avoid doing unnecessary injury to the building.

4. If injury is sustained to a building in consequence of the withdrawal of the lateral support of the neighboring soil of another, where it has been withdrawn with reasonable skill and care to avoid unnecessary injury, there can be no recovery; but if injury is done the building by the careless and negligent manner in which the soil is withdrawn, the owner will be entitled to recover to the extent of the injury thus occasioned.

5. RIGHT TO SERVITUDE—*by contract or prescription to lateral support of building.* The owner of a building situate upon the line or boundary of his land may acquire a right to the lateral support of the same from the soil of the adjacent owner by contract or by prescription. This right will constitute a burden upon the adjacent property.

6. PRESCRIPTION—*subject of, must be subject of a grant.* A prescription can not be for anything which can not be raised by grant; for the law allows a prescription only in supply of the loss of a grant, and therefore every prescription presupposes a grant to have been made.

7. SAME—*right by, can not exist in use of a street.* As an incorporated town or city holds the title to its streets and alleys for the use of the public, and have no rightful authority to grant them for any purpose inconsistent with the public use, it follows that an individual can not acquire a prescriptive right therein for any private use.

8. The doctrine seems well settled that an adverse right to an easement can not grow out of a mere permissive enjoyment for any length of time.

9. STREETS—*liability for injury to lot owner in opening and grading.* A municipal corporation, while acting within the scope of its authority in making excavations in a street for the purpose of opening or improving it, using proper care and skill, is not liable to a lot owner for an injury resulting to his buildings from the removal of the lateral support of the soil in the street.

WRIT OF ERROR to the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an action on the case, by Laura Jones, Carrie E. Jones, Harry E. Jones and Charles F. Jones, by Owen Thorn, their guardian, against the City of Quincy.

The first count of the declaration alleged, in substance, that at the time of the injury complained of, one Caroline Thorn, who was formerly the widow of Jehu P. Jones, deceased, was in the possession of a dwelling house and grounds, being the south half of lot 1, in block 5, of the original town, now city of Quincy, and in which said Jehu P. Jones resided at his death, in 1868, as his home and homestead; that the dower of the said Caroline, his widow, had never been assigned in the premises; that said Jehu P. Jones died owning the premises, and leaving the said Caroline, his widow, and the plaintiffs his heirs at law, and that they are entitled to the reversion in said premises upon the death of said Caroline; that after the death of the said Jehu P. Jones, and while said Caroline was in possession as his widow, in December, 1868, the defendant carelessly and negligently made a deep cut in the earth adjoining said premises, whereby said house became undermined and of little value, and had to be removed, and the lot caved and fell in, and became of little value and unfit to be built upon, etc.

The second count was substantially the same, except that it alleged that the premises had been occupied by Jehu P. Jones and his widow more than twenty years, and adjoined Second street of said city, and that the earth in said street for said time had been, and was the lateral support of said house and premises, and that the earth in said street was removed by the city, so that such lateral support was destroyed and the damage occasioned.

The third count was substantially the same. The plea of not guilty was filed and a trial had, resulting in a verdict and judgment for $2000 in favor of the plaintiffs. The city appealed.

Messrs. SKINNER & MARSH, for the plaintiff in error.

Messrs. WHEAT & MARCY, and Messrs. WARREN, WHEAT & HAMILTON, for the defendants in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The several errors assigned upon the rulings of the court below, present, in our opinion, but two material questions:

*First.* Are municipal corporations, while acting within the scope of their municipal authority in making excavations in streets for the purpose of opening or improving them, liable to property owners for injuries to buildings erected on lots abutting on the streets, resulting from the removal of the lateral support of the soil in the streets?

*Second.* Does the owner of a city lot, abutting on a public street, acquire a prescriptive right to have the buildings and structures on such lot sustained by the lateral support of the soil in the street, by the mere failure of the city to remove the soil within such time as would, in a proper case, afford evidence of a prescriptive right against an individual?

In *Nevins* v. *Peoria*, 41 Ill. 507, which was an action on the case for negligence in grading a street, whereby the flow of water was diverted from its natural channel, and thrown on the plaintiff's property, this general principle, equally applicable to the present case, was announced:

" The city is the owner of the streets, and the legislature has given it power to grade them, but it has no more power over them than an individual has over his land, and it can not, under the specious plea of public convenience, be permitted to exercise that dominion to the injury of another's property, in a mode that would render a private individual responsible in damages, without being responsible itself."

In support of the rulings of the court below, defendants in error insist that it is a well settled rule of law, that the owner of land has a right to have the soil of his premises sustained

by the lateral support of the natural soil of the adjoining land, and they cite *Humphries* v. *Brogden*, 12 Q. B. 743; *Thurston* v. *Hancock*, 12 Mass. 229; *Farrand* v. *Marshall*, 21 Barb. 409; Rolle's Abr. 665. An examination of these authorities, however, will show that this right of lateral support is limited to the soil in its natural state, and that it does not extend to the support of any additional weight which the owner of the soil may place upon it.

The reference found in Rolle is this:

" If A be seized in fee of land next adjoining the land of B, and A erect a new house on the confines of his land next adjoining the land of B, and if B afterwards dig his land so near the foundation of A's house, but no part of the land of A, that thereby the foundation of the house and the house itself fall into the pit, yet no action lies by A against B, because it was A's own fault that he built his house so near to B's land, for he, by his act, can not hinder B from making the best use of his own land that he can. But *semble*, that a man who has land next adjoining my land, can not dig his land so near mine, that thereby my land shall go into his pit; and, therefore, if the action had been brought for that, it would lie."

The facts in *Thurston* v. *Hancock*, were, briefly, these: In 1802, the plaintiff purchased a lot upon Beacon Hill, in the city of Boston, and in 1804 built a valuable house on it within two feet of his line. In 1811 the defendant became the owner of the adjoining lot, and began to dig down the hill, and had dug within five or six feet of the plaintiff's lot, when the earth gave way and exposed the foundations of plaintiff's house, and he had to take it down. The court held that the plaintiff was without remedy for the injury to his house, saying: "A man, in digging upon his own land, is to have regard to the position of his neighbor's land, and the probable consequences to his neighbor. If he digs too near his line, and if he disturbs the natural state of the soil, he shall answer in damages; but he is answerable only for the natural and necessary consequence of his act, and not for the value

of a house put upon, or near, the line by his neighbor. For in so placing the house, the neighbor was in fault, and ought to have taken better care of his interests. * * * He built at his peril, for it was not possible for him, merely by building upon his own ground, to deprive the other party of such use of his as he should deem most advantageous. * * For the loss of or injury to the soil merely, his action may be maintained. The defendants should have anticipated the consequences of digging so near the line, and they are answerable for the direct consequential damage to the plaintiff, although not for the adventitious damages arising from putting his house in a dangerous position."

*Humphries* v. *Brogden,* was an action for injury to plaintiff's land by the removal of the minerals under the surface, so that the land subsided, cracked, and was materially injured. Lord CAMPBELL, after reviewing the English cases upon the subject, among other things, said: "Where there are separate freeholds, from the surface of the lands and the minerals belonging to different owners, we are of the opinion that the owner of the surface, while *unincumbered by buildings, and in its natural state,* is entitled to have it supported by the subjacent mineral strata."

*Farrand* v. *Marshall* simply decides, that a man may dig on his own land, but not so near that of his neighbor as to cause the land of the latter to fall into the pit, and is not in conflict with the rule that the owner of a building, in the absence of a grant or prescriptive right, is not entitled to have it sustained by the lateral support of his neighbor's soil. After a somewhat extended and careful examination, we have been unable to find any serious conflict in the decisions, either English or American, on this particular question, and, therefore, deem it necessary to refer to but a few additional cases in its further elucidation.

In *Panton* v. *Holland,* 17 Johns. 92, plaintiff was the owner of a house and lot in the city of New York, and the defendant, in erecting a house on an adjacent lot, in order to lay

the foundation, dug some distance below the foundation of the plaintiff's house, in consequence of which one of the corners of the plaintiff's house settled, the walls were cracked, and the house, in other respects, injured. It was held that the plaintiff was not entitled to recover, unless on the ground of negligence in the defendant in not taking reasonable care to prevent the injury.

In *Lasala* v. *Holbrook*, 4 Paige, 169, complainants were seized of certain lots in the city of New York, on which was a church, erected many years before the filing of the bill. The defendant was the owner of an adjoining lot, and commenced the erection of a building which was intended to cover the whole lot, and to be six stories high. He was sinking the foundations of the building sixteen feet below the natural surface of the ground, and ten feet lower than the foundation of the church. It was claimed that, by excavating the lot in this manner, the defendant would greatly endanger the church; that one corner of the walls thereof, opposite which the excavation had been completed, had settled so as to leave a crack in the wall, and it was prayed that the defendant be enjoined from making the excavation.

Chancellor WALWORTH said : " I can readily believe, from the nature of the soil, and from the great depth of the defendant's intended excavation, below the foundation of the church, that the complainants' fears for the safety of their building are not entirely groundless. * * * It is not, however, alleged in the bill that the defendant is proceeding to improve his property in an unreasonable or unusual manner, or with any intention of injuring their wall or building. * * * I have a natural right to the use of my land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots; and the owners of those lots will not be permitted to destroy my land by removing this natural support. * * * But my neighbor has the right to dig the pit upon his own land, if necessary to its convenience and beneficial use, when it can be done without injury to my land

in its natural state. I can not, therefore, deprive him of this right by erecting a building on my lot, the weight of which will cause my land to fall into the pit which he may dig in the proper and legitimate exercise of his right to improve his own lot." And it was held that the complainants were not entitled to relief.

In *O'Connor* v. *Pittsburgh*, 18 Penn. 187, a church had been built according to the direction of the city regulator, and by a grade previously established. Afterwards, in pursuance of an ordinance, the grade of the street was reduced seventeen feet, and the church had to be taken down and rebuilt at a cost of $4000. It was held that the plaintiffs were not entitled to damages. The court say: "We had the case reargued in order to discover, if possible, some way to relieve the plaintiff consistently with law, but grieve to say we can find none. The law is settled, not only by Pennsylvania, but by every decision in the sister States except one."

The exception alluded to is Ohio, where it has been held that a party whose property has been injured by a change in an established grade of a street, is entitled to recover. But even the rule, as held in that State, is not consistent with the claim here made for defendants in error. In the *City of Cincinati* v. *Perry*, 21 Ohio St. 499, suit was brought for injuries to the dwelling house of the plaintiff, which was situated on a lot abutting on an alley, by reason of the construction of a public sewer in the alley by the defendant. The jury found specially that the defendant, in making the sewer, excavated to the depth of thirteen feet; that the plaintiff's building was injured by reason of the excavation; that all reasonable and ordinary care was taken, in making the sewer, to avoid injury to plaintiff's property; that plaintiff's foundation was about four feet in the ground, and was suitable for sustaining such a structure at the time of its erection. The court say: "At the time the house was built, and for many years before that time, Berden Alley, by the laws of this State, was in the possession, and under the control, of the city, for the purpose

of drainage; and sewerage was a legitimate mode of drainage, within the scope of its authority.   Before the plaintiff below built his house, the city had not, in any manner, as far as the record shows, indicated the nature or extent of drainage by sewers or otherwise, that would be required for the public use.   The plaintiff, without exercising any judgment or discretion as to the reasonable and proper future use of the alley for sewerage purposes, erected his house on a foundation suitable only for sustaining such a structure at that time, and under the then existing condition of the alley.   This was his own wrong, and he has no right to complain of an injury from the construction of the sewer, (which was built in a proper manner,) having neglected, on his own part, to exercise reasonable care."

In *Nevins* v. *Peoria, supra,* this court, in discussing the question then before it, said :   "A man can not do anything upon his own soil, under the plea of ownership, which amounts to a nuisance, and works injury to his neighbor, but within that limit he may do whatever his whim may dictate.   He may excavate to any depth, or raise the surface to any height, and the neighboring owner has no right to complain, because his enjoyment of his own lot is not thereby prejudiced.   Even if a building erected by me near the boundary of my lot is injured or endangered by an excavation made by my neighbor in his premises, I can not complain, because I have no right to the use of his soil for the support of my building."

See also, to the same effect, *Mamer* v. *Lussem,* 65 Ill. 484. But counsel argue that the rule recognized by these cases might do well enough in the rural districts, where such questions rarely arise, but that it totally fails to meet the necessities arising in cities.

For precisely the same reason the distinguished jurist who delivered the opinion in *Radcliffe Exrs.* v. *The Mayor, etc. of Brooklyn,* 4 Comstock, 197, claimed that Chancellor Walworth went too far in *Lasala* v. *Holbrook, supra,* in following the dictum in Rolle's Abridgment, and holding that even the soil in its

natural state was entitled to the lateral support of the adjacent soil, when this was essential. He said: " If the doctrine were carried out to its legitimate consequences, it would often deprive men of the whole beneficial use of their property. An unimproved lot of land in the city of Brooklyn would be worth little or nothing to the owner, unless he were allowed to dig in it for the purpose of building ; and if he may not dig because it will remove the natural support of his neighbor's soil, he has but a nominal right to his property, which can only be made good by negotiation and compact with his neighbor. A city could never be built under such a doctrine. I think the law has superseded the necessity for negotiation, by giving every man such a title to his own land that he may use it for all the purposes to which such lands are usually applied, without being answerable for consequences, provided he exercise proper care and skill to prevent any unnecessary injury to the adjoining land owner. The saying of Rolle may have been a wise one in his day, but it is not well adapted to our times." This we quote simply as giving the extreme view of the other side of the question, and it would seem to be quite as plausible as that of defendants in error. The more reasonable rule, however, and the one best sustained by authority, lies, in our opinion, between these extremes, and is that declared by the preceding cases to which we have referred. I have the right to use my land in such reasonable way as my judgment shall dictate, either by making excavations or superstructures thereon, subject, however, to the implied condition that I shall not thereby interfere with my neighbor in the enjoyment of the same right in respect to his adjacent land. Each is entitled to have his soil, in its natural state, sustained, when necessary, by the lateral support of the adjacent soil of the other; but neither has the right to burden such support by any additional weight, because this would, to that extent, appropriate the use of the property of the one, to the benefit of the other.

No danger is to be apprehended from malicious or capricious excavations, to be made as a mere means of injury or annoyance to an adjacent owner of the soil, for this is inconsistent with a reasonable and legitimate use of property, and such an excavation would not be within the protection of the rule. Moreover, it is required of the owner of the soil, having the right to excavate notwithstanding there are buildings upon the adjacent soil, that he shall exercise the right with reasonable skill and care, in view of the character of the buildings and the nature of the soil, so as to avoid doing unnecessary injury to the buildings. *Foley* v. *Wyeth,* 2 Allen, 131; and whether reasonable skill and care have been exercised, in view of all the circumstances in a given case, is a question of fact for the jury.

If injury is sustained to a building in consequence of the withdrawal of the lateral support of the neighboring soil, when it has been withdrawn with reasonable skill and care to avoid unnecessary injury, there can be no recovery; but if injury is done the building by the careless and negligent manner in which the soil is withdrawn, the owner is entitled to recover to the extent of the injury thus occasioned.

What has been said applies only to cases where the owner of the soil has no other right to the lateral support of the adjacent soil than results from the naked ownership of the soil, and does not apply where there is a valid right to burden the adjacent soil with the claim of lateral support resulting from contract or prescription.

Where a common owner of the soil originally held both parcels, that on which the plaintiff's house was built, and that which the defendant subsequently excavated, it is held the defendant is charged with the duty of supporting, not merely the soil, but the house of plaintiff's parcel. *Harris* v. *Ryding,* 5 M. and W. 71; *McGuire* v. *Grant,* 1 Dutcher, 356. Likewise, where the buildings are ancient, or those which have been erected on ancient foundations, and which, by prescription, are entitled to the special privilege of being

16—76th Ill.

exempted from the spirit of reform, the owner is said to be entitled to full protection against the consequence of any new excavation. *Hide* v. *Thornborough,* 5 Car. and K. 250; *Story* v. *Olden,* 12 Mass. 157; *Lasala* v. *Holbrook, supra.* No claim is made that the present case falls within the first exception, but it is argued that it is within the last, and this brings us to the second question in the order of the argument.

Blackstone says, in Sharswood's Ed. vol. 2, 263: "A prescription can not be for a thing which can not be raised by grant, for the law allows prescriptions only in supply of the loss of a grant, and, therefore, every prescription presupposes a grant to have existed."

The platting of the streets was a solemn dedication of the ground thus embraced to the corporation, for the uses and purposes of the public. *Canal Trustees* v. *Haven,* 11 Ill. 555; *Hunter* v. *Middleton,* 13 id. 54. "They were dedicated to the public for particular purposes, and only for such purposes can they be rightfully used. For those purposes the city may improve and control them, and adopt all needful rules and regulations for their management and use, but she can not alien or otherwise dispose of them." *City of Alton* v. *Transportation Company,* 12 Ill. 60.

It is the unquestioned duty of the city, in controling and improving the streets, to prepare them for public use, as streets, at such time and in such manner as the public necessities may require. Holding them in trust for the public and having no authority to convey or divert them for other uses, it would seem inevitably to follow that they can have no power to grant to individuals rights or easements in the street which might in any way interfere with the duty of preparing them for the public use, to meet the public necessities; for it is obvious that if such rights may be granted, then the practical use of the streets may become so burdened with private rights as to place it beyond the pecuniary ability of the city to discharge its duty to the public, with reference

to them.    It is not consistent to say that the city owes a duty
to the public, and yet that it may voluntarily place it beyond
its power to discharge that duty.

In *Gozler* v. *Corporation of Georgetown*, 6 Wheaton, 593,
claim was made for injury to plaintiff's property by reason of
a change of the grade in the street, and it was insisted that a
promise had been held forth by the corporation to all who
should build on the graduated streets, that the graduation
should be unalterable.

Chief Justice MARSHALL, in delivering the opinion of the
court, said : " But it can not be disguised that a promise is
held forth to all who should build on the graduated streets,
that the graduation should be unalterable.    The court, how-
ever, feels great difficulty in saying that this ordinance can
operate as a perpetual restraint on the corporation.

" When a government enters into a contract, there is no
doubt of its power to bind itself to any extent not prohibited
by its constitution.    A corporation can make such contracts
only as are allowed by the acts of incorporation.    The power
of this body to make a contract which should so operate
as to bind its legislative capacities forever thereafter, and
disable it from enacting a by-law which the legislature
enables it to enact, may well be questioned.    We rather
think that the corporation can not abridge its own legislative
power."

In *Smith* v. *Corporation of Washington*, 20 Howard, 135, the
same question was again before the Supreme Court of the
United States, and the court, per Mr. Justice GRIER, said:
" Streets can not be opened and kept in repair, or made safe
or convenient for public use, without being made level, or as
nearly so as the nature of the ground will permit.    Hills
must be cut down and hollows filled up, or, in other words,
the road must be ' *graded*,' or ' reduced to a certain degree
of ascent or descent, which is the proper definition of the
verb,' ' to grade.'    If the duty imposed on the corporation
requires this to be done, the power must be co-extensive with

the duty.  If charged with neglect of their duty, as public officers, bound to keep the streets in repair, it would not be a sufficient excuse to allege that the fences and obstructions are removed, and, therefore, the street is opened, or that it has been kept in as good 'repair' as it was found.

"A Court of Quarter Sessions would probably not receive a defense founded on such astute philological criticism of the terms of the statute ; nor could the allegation be admitted that, having once fixed the grade which is now found improper and insufficient, the corporation has exhausted its power, and has no authority to change the level or grade, in order to keep the street in repair.  As the duty is a continuing one, so is the power necessary to perform it."

Says Dillon (Munic. Corp. sec. 541): " The fundamental idea of a street is not only that it is public, but public for all purposes of free and unobstructed passage, which is its chief and primary but by no means sole use."

Other authorities bearing upon the question might be referred to, but we deem it unnecessary.  If the simple proposition were submitted, has a municipal corporation power to grant to the abutting property holders on an unimproved street the lateral support of the soil in the street, to the most ordinary apprehension it would but present, in another form, the question, may a municipal corporation, by contract with private parties, bind itself, through all time, not to improve a public street?  It is not claimed that, by the charter of Quincy, such unusual and extraordinary powers are conferred; and, under the ordinary powers to lay out, open and repair streets, the idea is, in our opinion, preposterous.

We must, then, hold that defendants in error can claim no right to the lateral support of the soil in the street, by prescription, because it is impossible that they could have obtained such right by grant.

Moreover, it seems well settled that an adverse right to an easement can not grow out of a mere permissive enjoyment for any length of time; and that is all that defendants in

error claim to have had. *First Parish in Gloucester* v. *Beach*, 2 Pickering, 60 (note); *Medford* v. *Pratt*, 4 ib. 222, 228; *Parker* v. *Framingham*, 8 Metc. 260; *Thomas* v. *Marshfield*, 13 Pickering, 240.

Inasmuch as the rulings of the court below were not in harmony with the views we have expressed, the judgment must be reversed and the cause remanded.

*Judgment reversed.*