EDWARD SPRINGER ET AL.
v.
ARTHUR WALTERS ET AL.

*Drainage—Particular District—Outside Lands—Injunction—Practice -Municipalities.*

1. A court may properly dismiss at any time, a bill showing no equity upon its face.

2. A city has exclusive jurisdiction over its streets, to keep them open and free to all.

3.  The acts of municipal authorities in determining what the character of public improvements shall be, are of a *quasi* judicial nature, and not ordinarily subject to revision by the courts.

4.  Upon a bill filed to enjoin a municipality from putting a public sewer to general use, and to require that it shall be used only for and by the residents and property of a certain limited territory, this court declines to interfere with the decree against the complainants.

[Opinion filed November 11, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. N. A. PARTRIDGE, E. M. ASHCRAFT and JULIUS STERN, for appellants.

Mr. ALLAN C. STORY and FRED W. STORY, for appellees.

A municipal corporation possesses the power to pass ordinances regarding the use and the price at which private persons may use drains and sewers, and also to protect them from injury and invasion.    2 Dill. on Mun. Corp., Sec. 644.    And such a corporation has no power to construct sewers for the mere private convenience or benefit of particular individuals. 2 Dill., Sec. 646.

Taxes and assessments are bonds or charges imposed by the Legislature, or under its authority, upon persons or property to raise money for public, as distinct from private, purposes or to accomplish some end or object public in its nature. There can be no legitimate taxation to raise money unless it be destined for the use or benefit of the government or some of its municipalities, etc.    A public use or purpose is of the essence of every tax.    2 Dill. Mun. Corp., Sec. 587.

The bill admits and proceeds upon the theory that this is public property, namely, a public sewer in a public street. Assuming that the village of Hyde Park had the power to create this drainage district and construct the sewer, and levy a special assessment on the property of plaintiffs and others therefor, assessing the property then benefited, instead of collecting by general tax, the fact that appellants paid their assessment and all the property increased in value, gives no right in the public improvement purchased with the taxes.

The sewer was laid in a public street then belonging to the village, and when the work was completed, it inured to the benefit of the general public, in whose name alone all actions for injury to, or connected with, the use of such sewer, must be brought. The capacity of the sewer, danger of overflow, or any of the other matters stated in the bill, give no right of injunction to any individual citizen. Their remedy, if any, is against the municipality. This action, therefore, to have availed, should have been brought by and in the name of the drainage commissioners, or the city of Chicago, as their legal successor, but they do not complain.

It has been frequently decided in New York, that resident citizens or taxpayers of a municipality, can not as such, either on their own behalf, or on behalf of themselves and others having a like interest, maintain a suit to restrain corporate acts alleged to be illegal. Such acts are considered to affect the whole public, and the public, by its authorized public officers, must institute proceedings to prevent or redress the illegal act. Where a private person is threatened with, or suffers some peculiar damage to his individual interests, that is, some damage distinct from that of every other inhabitant, he may maintain his bill for relief or injunction in his own name and protect his own interests; but private persons can not assume to be the champions of the country, and in its behalf challenge the public officers to meet them in the courts of justice to defend their official acts. 2 Dill. on Mun. Corp., Sec. 929, and cases cited pp. 913–915. And this is the law in Illinois.

*A fortiori*, no such action can be maintained by one citizen against another who holds a regular license from the city, for the purpose of preventing the latter from doing the act licensed.

The duties of municipal authorities in reference to the matters over which they are vested with control, such as sewers, water and the like, are of a *quasi* judicial nature. They are not subject to revision by a court or jury in a private action. Johnson v. District Collector, 118 U. S. 20; Wetmore v. Fisk, 15 R. I. 359; Blood v. City of Bangor, 66 Maine, 156; Cooley on Const. Lim., p. 79.

WATERMAN, J.  Appellants filed their bill in the court below, alleging that there was on the 7th day of November, 1887, passed by the village of Hyde Park, an ordinance creating a drainage district within said village, the same being bounded on the north by 60th street, on the east by Stony Island avenue, on the south by 67th street, and on the west by Cottage Grove avenue; that said ordinance provided for the construction and maintenance of a system of drainage, including the building of sewers and pumping works, and was in accordance with the provisions of an act of the Legislature approved June 22, 1885, entitled, " An act to vest the corporate authorities of cities and villages with power to construct and maintain drains, ditches and pumping works, by special assessment upon the property benefited thereby."  That thereupon, to defray the costs of constructing such works, a special assessment for the amount of about $120,000 was duly made upon the property within said district, and no lands lying outside of said district were assessed therefor; and drainage works, including sewers, engines, boiler and pumping works, were constructed for, and at the expense of such district, and are in actual operation.  That the entire expense of such construction was paid for by the residents and property owners of said district, and amounted to $200,000.  That to maintain such works requires an annual expenditure of several thousand dollars, and a special assessment for such purpose has been made on the lands of said district, and on none others, and that by reason of the foregoing the residents and land owners of said district have a vested right to the enjoyment of said system of drainage without the same being obstructed or deteriorated in value or usefulness by persons or property owners outside of said district, and without interference or use of the same by being connected to sewers or drains outside of said district, and that the lands within said district are not servient to any lands adjoining the same; that by reason of said improvement the value of real estate in said district has increased, and that if persons outside of said district are allowed to connect drains with the drains in said district, so that the lands outside can be drained into and upon the sewers within said district, it will greatly depreciate the value of the

lands within said district, and all persons owning lands within said district will be irreparably injured thereby and also injured and interrupted in the use of said lands.    That said drains are so constructed as to be much lower near the well and pumping works than at the outer boundaries of the district, so that connecting drains from lands outside of said district will drain such outside lands and tend to overflow and flood the lands within said boundaries, and will bring water upon said lands which does not flow there nor tend to do so, and which has never flowed to or upon the lands in said district.

That the defendant occupies lands outside of said district and is engaged in constructing a drain across Cottage Grove avenue, and is about connecting the same with the said drainage system of said district; that the lands of said Walters have not been assessed for or contributed to the construction or maintenance of said drainage system of said district, and that if he is allowed to so connect, it will compel the pumping, at great cost, for over a mile, by the works of said district, of water flowing from the lands of said Walters without said Walters contributing to such expense in any form, and will tend to overflow and flood the sewers in said district to the irreparable damage of the land owners and residents thereof. Therefore prays that said Walters be enjoined from connecting any drains and from draining any premises west of Cottage Grove avenue into the sewer east of said avenue.    The answer of Walters insisted that he had a right to make such connection, and had obtained leave to do so from the city of Chicago.

Affidavits were filed with said bill and answer, complainants alleging that the natural drainage of said Walters' lands was not over or through any of the lands of said district, but in an opposite direction.    A preliminary injunction having been granted, motion was made to dissolve the same, before the hearing of which the complainants made the city of Chicago a party defendant, setting up that after the aforesaid construction of said drainage works, the village of Hyde Park was annexed to, and became a part of the city of Chicago, and prayed for an injunction restraining the city as to the matters concerning which the said Walters had been enjoined.

Upon the hearing of the motion to dissolve the preliminary injunction the court dismissed the bill for want of equity.

Epitomizing the prayer of the bill, it asks to have the municipal authorities restrained from controlling public sewers, and forbidden to connect other sewers therewith, or to make use thereof for the purpose of draining other lands.

This bill seeks to take from the municipal authorities the control of a public sewer in a public street; to enjoin them from putting the same to general use, and to require that it shall be used only for and by the residents and property of a certain limited territory.   There is no charge that this is not a public sewer.   What is alleged, is, that in the public streets of a portion of the city, sewers have been constructed at the expense of a limited territory, the funds being raised by special assessment upon the property lying within such district.   Nor is there any allegation that the city authorities, or Walters, have been guilty of any fraudulent practices, or that either are acting in bad faith.   In what respect is the situation of appellants variant from that of parties owning property along, and living beside, a pavement which has been constructed by special assessment upon a limited territory?

Counsel would hardly contend that in such a case persons other than those who had paid for the improvement could be enjoined from using it.   It is insisted that a distinction exists in this case, because of the creation of a drainage district as authorized by the act of 1885; but this act nowhere provides that drains, or the pumping works constructed in pursuance thereof, shall be private property, or used only for the benefit of the property assessed to pay for their construction.

In pursuance of the act of June 22, 1885, no new corporation is brought into existence; a special drainage district may be, and in this case was, created, but the works thus erected, built by special assessment, are owned and controlled by the municipality of which the drainage district is a part.   These works, constructed as they are by the public authorities, because they were paid for by special assessment were none the less public improvements, made for public benefit, and, from the outset, public property.   It has been for many years customary in this State to construct sewers, pavements, side-

walks, and to put down water pipe in the streets of cities and villages, the expense of so doing being defrayed by special assessment upon the property benefited thereby; but we are aware of no case in which it has been held that the municipal authorities can be compelled to restrict the use of such improvements to the owners or occupiers of the property, by assessment upon which the work was done.

Upon what terms the city authorities, if at all, should have given the defendant, Walters, permission to connect with this sewer, we are not called upon to express an opinion, because it is the permitting of connection at all that is complained of.

Not only is the control of streets, sewers and drains vested in the municipal authorities, but their acts in determining what the character of public improvements, such as sewers, shall be, are of a *quasi* judicial nature, and generally are not subject to revision by the courts. Johnson v. District of Columbia, 118 U. S. 19; Child v. Boston, 4 Allen, 41; Hills v. Brooklyn, 32 N. Y. 489.

That the municipal authorities will so control the sewers and drainage system of the entire city, that the lands of complainants will be properly drained, and not be flooded by water flowing from other lands, may be presumed.

A city has exclusive jurisdiction over its streets, not for the purpose of appropriating them in perpetuity to the use of private individuals, but to keep them open and free to all. Wood v. Mears, 18 Ind. 515; Hart v. Albany, 9 Wend. 571.

No case has been cited sanctioning the granting of vested rights to an exclusive use of public property, such as is claimed in this case, nor has our attention been called to any statute giving the village of Hyde Park power to give to either individuals or a portion of the public, vested rights in public property to the exclusion of the general public.

The Supreme Court of this State in City of Quincy v. Jones, 76 Ill. 231–242, say: "Holding the streets in trust for the public use and having no authority to divert them to other use, it would seem to follow that they can have no power to grant to individuals rights or easements in the street which might in any way interfere with the duty of preparing them for the public use to meet the public necessity." We express

no opinion as to what the rights of appellants will be in case an attempt shall be made to make a special assessment for the maintenance of this drainage system, after outside parties have been allowed to connect therewith.

It is insisted that the court was not warranted in hearing the case at the time it did. As in the view we have taken the bill showed no equity upon its face, the court might properly dismiss the same at any time, and it is therefore immaterial whether the case was properly taken up for hearing.

*Decree affirmed.*