## EDWARD KRAMER

*v.*

## THE NORTHERN HOTEL COMPANY.

*Opinion filed June 21, 1900.*

1. CONTRACTS—*when contract does not authorize recovery for settling of party wall.* A contract between a hotel company and the tenant of a building, whereby the company is given permission to re-build a foundation wall of such building, and which provides that the company shall support and sustain the wall "during the excavating and putting in of said foundation," does not impose upon the company the duty of lateral support after the completion of the work, so as to authorize a recovery for damages which are the natural and ordinary result of the location of the foundation and the placing of the superstructure thereon.

2. DAMAGES—*damages due to plaintiff's own action are not recoverable.* One who has licensed another to enter upon his premises for the purpose of making alterations needed for the construction of a building adjoining, cannot recover for damages sustained where the defendant would have completed the work before the damage occurred had the plaintiff not ordered defendant's workmen away and refused to allow them to put his building in repair.

*Kramer* v. *Northern Hotel Co.* 85 Ill. App. 264, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

BARNUM & BARNUM, and ROBINS S. MOTT, for appellant.

HUGH L. BURNHAM, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On May 13, 1890, the appellant as first party and appellee as second party entered into a written agreement, in which it was recited the hotel company was desirous of erecting a hotel building in the city of Chicago, the east line of which was to be contiguous with and adjoin-

ing the premises occupied by Kramer as a saloon and boarding house, and that it was desirous of extending its east foundation under the west wall and west portion of the basement of the building so occupied by him as tenant, and license so to do was therein given on the payment to Kramer of $1800, conditioned on the hotel company obtaining the written consent of the owner of the building, and permission was given to tear down such portion or portions of the west wall enclosing the basement as might be necessary, and to occupy the basement for the purpose of excavating and building the foundation of said hotel building, and so to use and occupy the said basement for forty-five consecutive days, and no longer, fixing therein the date of commencing such operations. It was further provided that five days' written notice should be given to the said Kramer of the time of commencing operations, so as to permit him to remove certain saloon fixtures. It was further provided that the hotel company should first, before commencing any other work, remove and restore on the other side of the basement all sewer, water and gas pipes, so that Kramer might not be in anywise disturbed in his use of the sewer, water and gas in said building; and also that the hotel company should not obstruct, in any manner, the entrance to the saloon or upper part of said building, and that the hotel company "will at its own expense support and sustain the west wall of the said building during the excavating and putting in of said foundations, and will restore said basement, including sewer, water, gas and waste pipes, and said west wall, to the party of the first part, at the conclusion of said work, in the same condition as the same now are, except only as to the saloon fixtures, which are to be removed by the party of the first part; that it will wholly finish and complete said operations within forty-five days," and providing for liquidated damages at $30 per day for each day that the basement should remain in an unfinished condition after forty-five

days from the commencing of work according to notice, "and that it will pay to the party of the first part any damages which he may sustain in and about the construction of said hotel building, and for which said party of the second part would be liable were it not for this instrument, other than such damages as may be sustained by him by reason of the use and occupation of the basement, and in addition thereto will pay any and all damages which may be sustained by the party of the first part by reason of the negligence of the party of the second part, its agents or servants, in or about any of the work or operations in or about the said basement." Time was made of the essence of the agreement.

Afterwards the appellant commenced his suit in assumpsit thereon, against the appellee, alleging certain breaches of the contract, to which the defendant pleaded not guilty. On the trial it was attempted to be shown that the foundation put in by defendant settled, causing cracks in appellant's building, and that thereby, and on account of failure to take care of the water falling on plaintiff's roof, and the removal of the down-spout which had formerly passed through plaintiff's west fire-wall, which extended some eighteen inches above the roof and thence down the side of his house, and failure by the defendant to supply another, the water came down through the various stories of plaintiff's house, thereby drenching his rooms, damaging his furniture and causing his boarders to leave.

The jury found the issues for the defendant, and also answered specially certain interrogatories, all of which supported their general finding. The judgment of the circuit court has been affirmed by the Appellate Court. No cause is shown by the errors assigned for a reversal of that judgment unless there was error in the giving of instructions offered by the appellee.

Appellant complains of certain instructions given, but we fail to find any reason, from his brief, for his conten-

tion that they are incorrect or the jury were misled by them. By the second instruction the jury were told that if they believed, from the evidence, that the defendant, before entering upon plaintiff's premises, received permission so to do and do certain work, including the removal of the down-spout and the placing of another in its stead to carry the water from the premises occupied by the plaintiff, and that it, by its servants, was making every effort to complete said work, and would have done so before the plaintiff's premises had been damaged but for the fact they were ordered from the premises by the plaintiff himself before said work was completed, thereby revoking the permission, and that defendant's servants had no right to stay longer, then the jury should find defendant not guilty for any damages caused by its failure to complete said work. And by the third instruction the jury were told, that even if they believed that the plaintiff ordered the agents or servants of the defendant away because having been told to do so by one John Root, the architect, and even if Root did give such advice, the plaintiff was not excused from the duty of permitting the defendant to repair the roof or down-spout, and that if the plaintiff refused to permit the workmen of the defendant from making such repairs he could not recover for any damages which happened after that time. These two instructions were based on the evidence, and there was no error in giving them.

By the fourth instruction the jury were told that no duty rested upon the defendant of preventing the plaintiff's west wall or building from sinking along with the defendant's own building; and by the fifth, that if they believed, from the evidence, that the defendant, at the end of the forty-five days, restored plaintiff's cellar, including the sewer, water, gas and waste pipes and the west wall of plaintiff's building, to as good a condition as they were in at the time when the defendant entered to build its foundation, and that the defendant afterwards

used reasonable care, in erecting its own building, not to injure plaintiff's premises, the plaintiff could not recover for any damages, if any there were, caused thereafter by reason of any sinking, settling or other injury to plaintiff's building resulting solely from the construction and settling of the wall and the building which the defendant built upon its own adjoining property. And by the sixth instruction they were told that the defendant was required to support plaintiff's west wall only while it or its agents were at work in the basement of plaintiff's premises, and on leaving said basement at the completion of their work they were only required to leave the support to said wall in as good condition as when they entered to begin their work, and that if they believed, from the evidence, that the defendant did these things, then the plaintiff could not recover for damages, if any there were, which resulted afterwards by reason of the sinking of said west wall of plaintiff's building.

It will be noted that by the terms of the contract the defendant was not absolved from the payment of damages sustained by the plaintiff other than those sustained by reason of the use and occupation of the basement, and that the defendant expressly agreed to pay such damages for which it might be liable were it not for the instrument. By the further terms of the instrument, however, the defendant was only required "at its own expense to support and sustain the west wall of said building (plaintiff's building) during the excavating and putting in of said foundation." This requirement would negative the idea that defendant was required to support plaintiff's wall so as to prevent it settling thereafter with the foundation upon which it stood. The relations sustained by the parties under the contract were not the same as parties to a party wall agreement. Plaintiff was a tenant, merely. Defendant was given the right to put down its foundation under his building, for which he received $1800. No recovery can be had for damages the

reasonable, natural and ordinary result of the location of this foundation and the placing of the superstructure upon it. No duty of lateral support rested upon defendant. *City of Quincy* v. *Jones,* 76 Ill. 231.

The remaining instruction did not go to the right but only to the extent of recovery.

Finding no error in the record the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*