(No. 5324—

JOHN PATTON and JACQUELINE R. PATTON, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 27, 1971.*

LEITER, MEWLIN, FRASER, PARKHURST & McCORD, Attorneys for Claimants.

WILLIAM J. SCOTT, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

BURKS, J.

A house on a hilltop, claimants' residence, was so badly damaged by a landslide that it became virtually worthless and had to be abandoned. Claimants charge that the landslide which resulted in a total loss of their property's value was caused by acts of negligence on the part of the Illinois Division of Highways.

Claimants' residence was located on the top of a steep hill some 100 feet back from the highway known as U.S. Route 24, south of Bartonville, in Peoria County. The complaint charges that the respondent, while constructing this highway in 1954, was negligent in cutting back the hillside in front of claimants' house and in failing to exercise due care to avoid unnecessary damage to claimants' property.

Various other acts of negligence alleged in the

complaint include the following. No prior notice was given to the claimants as to the magnitude of the cut which was made into the hillside. Respondent removed a concrete block garage set into the hillside at the foot of the hill where the cut was made. No retaining wall or other structure was constructed by the respondent to shore up or support the hillside after the cut was made. The employees of the Division of Highways should have known that cutting into the base of the hillside below the claimants' property would constitute a dangerous, unsafe condition and would be conducive to landslides.

The complaint further states that various representations and promises were made to the claimants by employees of the Division of Highways, both before claimants purchased their property in 1953 and after respondent had made the changes in the hillside in 1954 which allegedly caused claimants' loss. Claimants state that none of these representations and promises were carried out by the respondent.

Subsequent to the cutting and removal of the dirt from the base of the hill, according to the complaint, four landslides occurred on the claimants' property, which caused varying degrees of damage. These were in 1958, 1961, 1964 and, finally, the most serious one in 1965 tore away the foundation under claimants' house and otherwise damaged it so that it was not habitable and repair would not be economically feasible.

The complaint alleges that the claimants were forced to move out of the property in January of 1966 because it was no longer safe to live there; that the negligent acts of the Division of Highways caused the property to become valueless and claimants to lose the investment which they had made in the acquisition and improvement of the premises.

The amount of $7,500.00, which claimants ask in damages, is shown by the evidence to be a fair and even a modest estimate of their actual financial loss. None of the testimony relating to the amount of claimants' damages is denied or controverted.

No answer having been filed by the respondent, a general traverse or denial of the facts set forth in the complaint is considered as filed pursuant to the rules of this Court. However, in the voluminous record of the hearing in this case, we find that none of the testimony upon which claimants rely was disputed by the respondent. It is therefore accepted as factual. Following is a summary of these undisputed facts presented by the claimants.

In September 1952, before the claimants purchased and moved into the property, they called the Highway Division for information regarding its plans for the improvement of the highway below and in front of the property which they were considering buying. A representative from the Highway Division came out and talked to the claimants, gave them a plat showing the approximate boundary of the proposed frontage road, and told them that the construction would not involve a cut into the hillside. He said that just a little bit of the bottom of the hill would be scraped away in order to put in a curb and gutter at the edge of the new frontage road. Thus assured, and relying on this assurance, the claimants purchased the property and moved in.

In the spring of 1954, without notice to the claimants, the Highway Division cut a slice off the base of the hill all along the front of claimants' property within the area of the highway right-of-way. This cut extended some 20 feet into the hillside, and was 3 to 5 feet deep. An old garage at the foot of the hill was removed at the time the cut was made. The edge of the claimants' driveway was left hanging some

2 or 3 feet above the level of the road. No shoring, bracing or retaining wall was built by the respondent in or against the cut-back hillside although, after the cut, employees of the Highway Division at various times represented to the claimants that some sort of retaining wall would be constructed.

Prior to this cut, no slide or movement of earth had occurred on the hillside for more than 50 years. Prior to making the cut, the Highway Division had made some test borings to determine the nature of the soil in the hillside. None were made directly in front of the claimants' house, but a test boring some 110 feet away showed that the top surface of the hillside was silty clay to a depth of 7 feet. No attempt was made to compact or tamp down any of the fresh dirt on the hillside which had been exposed by the cut. The respondent was aware that the land in the general area was conducive to sliding.

In 1958, after the completion of the highway improvement, a landslide occurred on the hillside in front of the claimants' house. Some of the concrete blocks fell out from underneath their front porch and rolled down the hill. The footings underneath the front porch sank about 6 inches. Mrs. Patton, one of the claimants, called the Highway Division, notified them of the slide, and asked if it was due to their cutting at the bottom of the hill. She was assured there was nothing to worry about, and so her husband poured some concrete on top of the old footings, replaced the blocks under the foundation of the house, and supported the porch floor with some heavy timbers.

In 1961 another landslide occurred some 80 feet north of the claimants' house, uphill from their driveway, and almost directly above the place where the old garage had been removed from the foot of the hill. This slide came down over claimants' driveway and closed it off. The

Division of Highways was notified immediately and one of its engineers, Mr. Louis Baxter, came out, observed the landslide and talked to Mrs. Patton. He declined to do anything about the removal of the dirt, and told her that there was nothing he could do about it because it was not on the State's right-of-way. The claimants then contacted the County Highway Department which sent men out to the site with a bulldozer and cleared claimants' driveway.

In 1964, another slide occurred uphill from the driveway, in approximately the same area as the 1961 slide. Again the claimants' driveway was closed by the sliding earth. Again the Highway Division was immediately notified and asked to clear the driveway. Again Mr. Baxter talked to Mrs. Patton, but told her that it was not within the State's right-of-way, and nothing could be done about it. He didn't bother to come out and look at it. That second time, the County Highway Department refused to come back again and clear claimants' driveway because they said it was the State's responsibility. Mr. Patton finally shoveled enough of the dirt off the driveway himself to get his car up to the house.

In March of 1965 the final catastrophic slide occurred. This time, again, it was directly in front of the claimants' house. It tore out the foundation beneath the porch and carried dirt, debris, trees and shrubs down the hillside onto the frontage road below. It left the claimants' house precariously overhanging the hillside, and damaged it beyond repair. The slide originated about 20 feet above and uphill from the top of the cut.

The landslide was newsworthy enough to cause the Peoria Journal Star to take pictures of the scene from a helicopter and run them in the newspaper on April 10, 1965. These published photos were among claimants' exhibits.

On the morning after the landslide, several employees

of the Highway Division went to the site and evidenced great concern. Mr. J. E. Harland, respondent's district engineer, looked over the situation and caused a number of pictures to be taken. Twenty-five of these photos were selected by the attorney for the claimants as being representative of the scene and were admitted in evidence as claimants' exhibits. Mr. Louis Baxter, respondent's field engineer, and a Mr. Scribner went to the scene also, talked to Mrs. Patton, and suggested that she move out of the house immediately because it was dangerous and unsafe to live there. While these men were talking with Mrs. Patton, a messenger came with a special delivery letter and handed it to Mrs. Patton. The letter stated the Highway Division was not responsible for the landslide.

After viewing the scene, a decision was made by the respondent to leave things alone and place barricades around the dirt and debris which had slid down the hill and partially obstructed the frontage road. These barricades for the protection of passing motorists remained in place for months after the slide and are shown in the newspaper pictures among claimants' exhibits. The dirt and debris which obstructed the road was left in place and not disturbed because it was feared by all concerned that its removal might precipitate another landslide. The dirt pile had not been removed at the date of the hearing on this matter, November 20, 1967, and traffic was required to move around it.

Respondent, in denying liability, argues that under the doctrine of lateral support, as enunciated in *I.L.P. Adjoining Landowners, Sec. 11* and in numerous Illinois decisions, claimants' right to lateral support extends only to their soil in its natural condition and not to their house or any structure on their land.

We could accept this well established rule of law as

controlling if we did not have before us the question of negligent excavation which is governed by the equally well established rule stated in *I.L.P. Adjoining Landowners, Sec. 14:*

"In the leading case of *City of Quincy* vs. *Jones*, 76 Ill. 231, as well as in other decisions, the courts of this state have established the rule that the right to excavate on one's own property should be exercised with reasonable skill and care in order to avoid unnecessary damage to buildings and structures on adjoining properties, taking into consideration the character of such buildings or structures and the nature of the soil."

A comprehensive discussion of the doctrine of lateral support in Illinois, and the right of action for negligent excavation, is set forth in *1956 Law Forum, pages 646 to 650.* The writer, after a review of all the applicable Illinois cases, concludes as follows:

"Absent contributory negligence, there is always a right to recover for injury to improved land for damages to both land and buildings, where the injury was caused by negligent excavation, even though the land would not have subsided without the additional weight of the buildings."

The above rule is restated to the same effect in *I.L.P. Adjoining Landowners, Sec. 16.*

The two essential questions in this case are, first, whether or not the Division of Highways was negligent in some manner in cutting away the foot of the hill in front of claimants' house and, second, whether that negligence caused the landslides and the accompanying damages.

Respondent insists, in its brief, that claimants failed to maintain the burden of proving negligence on the part of the Division of Highways. We disagree. The evidence, taken as a whole, reveals a pattern of negligent conduct by the respondent in this case. Several acts of the respondent have each been the basis for a finding of negligence in the cases cited in claimants' brief. When these acts are considered together and in their relationship to each other, respondent's negligence is even more clearly established.

We find that the Division of Highways was negligent in

some, if not all, of the following ways: when it represented to the claimants that it would not cut into the hillside; when it gave no notice of the cut which was made in the spring of 1954; when it failed to compact or tamp down the raw earth exposed by the cut; when it failed to shore up the hillside, or put up any sort of retaining wall; and when it failed to anticipate that its cut might cause a landslide in front of the claimants' house.

The finding of negligence in these acts is buttressed by the evidence showing that the respondent took no test borings in front of the claimants' house. Respondent knew the soil condition some 110 feet away to be silty clay to a depth of 7 feet and that the hillsides in the area were conducive to slides. It knew that the claimants' hill was steep and that the cut at the bottom made it steeper. It knew that landslides had occurred in front of claimants' house in 1958 tearing out a part of the foundation. It knew that landslides had occurred in 1961 and 1964 which obstructed the claimants' driveway. It knew, or should have known that, prior to the cut, no landslides had occurred on claimants' property, for more than 50 years. Even after the slides of 1958, 1961 and 1964 on the claimants' property, respondent made no effort to shore the hillside with railroad ties, as it had done elsewhere, or put in any retaining wall, although its employees on more than one occasion assured the claimants that this would be done. Respondent's negligence is clearly established by a very substantial weight of evidence.

We come now to the final question as to whether respondent's negligent removal of lateral support was the proximate cause of the landslide which damaged claimants' property.

The evidence, again taken as a whole, proves conclusively that the cut at the base of the hill did cause the

subsequent landslides. The testimony of claimants' witnesses shows that there had been no movement of the earth on claimants' property for more than 50 years prior to the cut that respondent made. Frank Petri, a neighbor, testified that he tended his cow on the meadow where the claimants' house was built as far back as 1912 and has been thoroughly familiar with the property ever since. He knew that the plateau extended out beyond claimants' front porch and that there was room to walk around in front of it. The claimants told about the condition of the house when they moved in, in 1953. There were then no cracks in the plaster of the upstairs wall or ceilings, no cracks in the foundation. Other neighbors testified that the hillsides in the entire area, in front of the old road, had been stable and unchanging over the years until highway improvements involving cutbacks were made along the base of the hills.

No rebuttal or denial was offered by the respondent to this cumulation of evidence that (a) there had been no landslides for half a century on the claimants' property and other property in the vicinity prior to cutbacks in the base of the hillsides, and (b) after such cuts, a rash of landslides occurred. This evidence of causation is certainly strong and persuasive.

The respondent made one effort to refute the circumstantial evidence of causation. It brought in an expert, as its only witness beside Mr. Harland, the District Highway Engineer. The expert was Dr. Thomas H. Thornburn, a Professor at the University of Illinois, working in the field of soil engineering. He visited the claimants' property the morning of his appearance as a witness, and spent about an hour looking over the premises and examining some of the photographs and drawings which the Highway Division showed him. On direct examination, he gave an opinion that the cut at the bottom

of the hill was not the cause of the 1965 slide in front of the claimants' house, and that it was probably due to the bad weather that spring. On cross-examination, Dr. Thornburn admitted that he did not know of the 1958 slide in front of the claimants' house, within 4 years after the cut, and he didn't have any basis for determining what might have caused that slide. He also admitted that the removal of dirt from the bottom of a hill, if in sufficient quantity, could be a "contributing factor" to a subsequent landslide which originated at the top of the hill. Dr. Thornburn further acknowledged that the condition of the soil, the history of adjacent terrain, the steepness of the hill, and the prior slides on the claimants' premises, none of which factors he had studied, would have affected his opinion.

Under these circumstances, Dr. Thornburn's first conclusion lacks significant credibility. The factors he suggests, as being proper considerations in a reasonable determination of cause, have been well met by claimants' evidence. This was no minor "scraping off", or slight changing of the grade of the hill. It was a deep and penetrating cut. To take the base of the hill back 20 feet, and cut down a perpendicular slice a distance of 3 to 5 feet all along the front of the claimants' property, was almost an act of wilful disregard for the safety of the claimants and the safety of the public traveling on the frontage road below. It is incredible that anyone could have assumed, under the circumstances, that the hillside would remain in place very long after taking away that much of its base support. To compound the situation by refusing to put in place any sort of shoring or support, even a few railroad ties or some sort of ground cover, indicates an apparent disregard for the foreseeable consequences.

Finally, respondent's District Highway Engineer, Mr.

J. E. Harland, testified at the hearing, which was held nearly two years after the landslide, that the Division of Highways had not removed the dirt and debris that slid down onto the highway from claimants' property, although it created a traffic problem, because "the removal of the debris may create further sliding up the hill". If so, it is the heighth of inconsistency for respondent to deny that its cut in the hillside was the cause of the slide which damaged claimants' property. The extreme care exercised by the Highway Division after the damage was done merely accentuates the carelessness of its previous actions which caused claimants' financial loss.

The facts in this case distinguish it from *Wheeler* vs. *State, 6 C.C.R. 65,* in which we held that the slides were not caused by the excavation of the road but by other factors. In the case at hand, the burden of proving causation has been fully met by the claimants.

Claimants have also proved that they have sustained a financial loss of at least $7,500.00, the amount asked for in the complaint, by any reasonable interpretation of the evidence. As we stated earlier in this opinion, none of the testimony relating to damages is denied or controverted.

Claimants, John Patton and Jacqueline R. Patton, the joint tenant owners of the damaged property, are hereby awarded the sum of $7,500.00.